573 P.2d 675

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Charles BROWN, Defendant-Appellant.**

**No. 2890.**

Court of Appeals of New Mexico.

Nov. 8, 1977.

Toney Anaya, Atty. Gen., Paquin M. Terrazas, Asst. Atty. Gen., Santa Fe, for appellee.

Jan A. Hartke, Chief Public Defender, William H. Lazar, Asst. Appellate Defender, Santa Fe, for appellant.

## OPINION

WOOD, Chief Judge.

Convicted of two counts of assault upon a police officer with intent to kill, defendant appeals. Section 40A–22–22(A), N.M.S.A. 1953 (2d Repl. Vol. 6). We discuss: (1) expert to aid in jury selection process; (2) excluded evidence; and (3) double jeopardy.

### Expert to Aid in Jury Selection Process

The convictions resulted at defendant's second trial; at the first trial the jury was unable to agree and a mistrial was declared. Prior to the first trial, defendant moved for the appointment of an expert witness to assist the defense in the jury selection process. The assistance was to be "in formulating questions for and analyzing the responses of prospective jurors on the issue of racial bias." The racial bias contention is based on the fact that defendant is black. The trial court denied the motion. Defendant claims this was error.

One answer to this issue is that defendant never sought the expert assistance in connection with the second trial at which he was convicted. Another answer is that there is no claim that the jury which convicted defendant was not fair and impartial.

The purpose of voir dire is to enable a defendant to obtain a fair and impartial jury. See *State v. Fransua*, 85 N.M. 173, 510 P.2d 106, 58 A.L.R.3d 656 (Ct.App. 1973). Voir dire is not for the purpose of enabling defendant to obtain a desired jury. Compare *State v. Ortiz*, 88 N.M. 370, 540 P.2d 850 (Ct.App.1975). Absent a claim that the trial jury was not fair and impartial, defendant has no basis for complaint about the jury selection process. *State v. Gonzales*, 82 N.M. 388, 482 P.2d 252 (Ct. App.1971).

### Excluded Evidence

(a) The witness Pinkston testified at the first trial. Defendant sought to introduce this first trial testimony at the second trial on the basis that Pinkston was "unavailable". See Evidence Rule 804(b)(1).

The basis of the unavailability claim was that defendant had been unable to procure Pinkston's attendance at the second trial by process or other reasonable means. Evidence Rule 804(a)(5). There was no error in excluding Pinkston's first trial testimony. The record shows that Pinkston was in the Hobbs area, that defendant made no attempt to subpoena Pinkston, and his efforts to secure Pinkston's attendance were no more than two or three telephone calls to Hobbs during the three-day period prior to the second trial. Defendant never personally contacted Pinkston. There was an insufficient showing of unavailability. See *State v. Mann*, 87 N.M. 427, 535 P.2d 70 (Ct.App.1975).

(b) The five other items of excluded evidence all involve testimony that was tendered and excluded at both trials. The rulings excluding evidence must be considered in context. It is undisputed that defendant shot the officers with a handgun. A defense, at both trials, was that the officers were not acting in the lawful discharge of their duties in the events leading to the shooting. Another defense was that defendant feared the officers and shot them in self-defense. See *State v. Kraul*, 90 N.M. 314, 563 P.2d 108 (Ct.App.1977).

In support of the above defenses, testimony was admitted concerning specific encounters between defendant and police officers. These encounters occurred between February, 1976 and the shootings on August 26, 1976. The defense view of these encounters was that the police hassled defendant and other blacks in the South Broadway area of Albuquerque. At least three of the incidents occurred between February and July, 1976. At least two incidents occurred on the day before the shooting and one occurred prior to the shooting on the evening of August 26, 1976. The specific incidents included identification checks, physical harassment, taking defendant to the police station and then releasing him without charges being filed, and threats to "get" the defendant. Defendant testified that he feared the police and that he avoided the police as much as possible because of their harassment.

■ Defendant tendered the testimony of two witnesses, Dozier and Andrade. Their testimony went to what defendant had told them in conversations. What defendant told them was that police officers threatened to get defendant "off the street". To avoid the hearsay rule, defendant tendered the testimony under Evidence Rule 803(3) to show defendant's then existing state of mind. We need not determine whether the tender was sufficient to show "state of mind". The trial court could properly exclude the tender because it was cumulative. Evidence Rule 403. There was an abundance of evidence, from witnesses other than defendant, concerning defendant's state of mind toward the police. The evidence of specific acts of harassment and specific threats supported defendant's "fear" claim. No substantial right of defendant was affected by the exclusion of the tendered evidence of these two witnesses. Evidence Rule 103(a).

Defendant also tendered evidence of two other witnesses concerning police conduct following the shooting. We need not consider defendant's arguments as to why this post-shooting conduct was admissible. Even if the post-shooting conduct was relevant, which we do not decide, the trial court could properly exclude this evidence of police post-shooting conduct on the basis that it was an accumulation of testimony concerning specific conduct by the police. Evidence Rule 403. No substantial right of defendant was affected by the exclusion of the tendered testimony of these two witnesses. Evidence Rule 103(a).

The fifth item of excluded evidence was the tendered testimony of a social psychologist. As we understand the tender, the social psychologist studies one's behavior as influenced by others. We are not concerned with the qualifications of the psychologist; when tendered as an expert in the field of social psychology, the prosecutor stated he had no objection. See *State v. Ellis*, 89 N.M. 194, 548 P.2d 1212 (Ct.App. 1976). The expert testified about certain reports and publications concerned with police conduct toward minority groups and the perception by minority groups, particu-

larly blacks, that the police are a threat to minority group members. He testified that the method of analysis used in the reports and publications was a method reasonably relied on and that the reports and publications were "reputable sources". The prosecutor did not cross-examine as to any of this foundation testimony. The result was that foundation testimony, used by the psychologist in forming an opinion, went unchallenged.

■ The psychologist testified that the results in the reports and publications on which he relied were consistent with a "limited" study made in the South Broadway area of Albuquerque, the area in which defendant lived and in which the shootings occurred. The psychologist testified that he had listened to defendant's trial testimony (of the various specific instances of defendant's police encounters). The State, on appeal, incorrectly states that the psychologist did not relate the various studies to defendant. The psychologist stated that the reports and publications were applicable to the South Broadway area of Albuquerque and, on the basis of defendant's trial testimony, were also applicable to defendant.

The psychologist's opinion was that defendant "would be likely" to fear the police in the situation related in defendant's trial testimony. This opinion was excluded on the basis that it was irrelevant. This was incorrect; defendant's fear of the police was relevant to whether defendant believed he was in immediate danger of bodily harm—an element of self-defense. U.J.I. Crim. 41.51.

We have previously pointed out there was an abundance of "specific incident" testimony; this testimony supports the inference that defendant feared the police. In this situation, can the exclusion of the psychologist's testimony be considered as properly excluded cumulative evidence? The psychologist was tendered as an expert; the other witnesses were lay people. The expert was not of the South Broadway area; the lay witnesses were from the area. With these distinctions, the exclusion of the

tendered testimony of the psychologist cannot be justified on the basis that it was cumulative. Compare the facts in *Chacon v. State*, 88 N.M. 198, 539 P.2d 218 (Ct.App. 1975).

Although the tendered testimony of the psychologist was relevant and not cumulative, did the trial court err in excluding the testimony? The admission or exclusion of expert testimony is within the discretion of the trial court; the trial court's ruling is reviewed to determine whether there was an abuse of discretion. *State v. Brionez*, 90 N.M. 566, 566 P.2d 115 (Ct.App.) decided October 25, 1977 and cases therein cited. Under the Evidence Rules, the issue is whether the excluded evidence affected a substantial right of defendant. Evidence Rule 103(a).

An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances. *State v. Brionez*, supra. Pertinent facts and circumstances in the case are:

(a) The excluded testimony of the psychologist was relevant and not cumulative.

(b) The extensive and, to us, effective cross-examination of defendant by the prosecutor severely weakened the credibility of defendant's fear testimony and the credibility of the specific instances of police harassment to which defendant testified.

(c) Conflicting inferences may be drawn from the testimony of other defense witnesses. While the inference of fear may properly be drawn, inferences of anger and of rejection of authority can also be drawn.

The logic and effect of these circumstances is that tendered expert testimony was excluded that would have supported defendant's theory of self-defense, a theory that was weakened by cross-examination and rendered problematical by conflicting inferences from other testimony. Since this tendered testimony was not properly excluded on other grounds, defendant was denied his fundamental right to present witnesses in his own defense. *State v. Dorsey*, 87 N.M. 323, 532 P.2d 912 (Ct.App. 1975), aff'd on other grounds, 88 N.M. 184, 539 P.2d 204 (1975). This was an abuse of discretion. This requires reversal of the convictions and remand for a new trial.

*Double Jeopardy*

■ Defendant has sought and obtained a reversal of his convictions. The remand for a new trial is not barred by the prohibition against double jeopardy. *State v. Sneed*, 78 N.M. 615, 435 P.2d 768 (1967).

The double jeopardy issue involves the charges on which defendant may be tried. This issue was raised prior to the second trial and involves the mistrial declared when the jury at the first trial could not agree on a verdict.

Three charges were submitted on each of the two counts at the first trial. They were: (a) assault upon a police officer with intent to kill, § 40A–22–22(A), supra; (b) aggravated battery upon a police officer, § 40A–22–24, N.M.S.A.1953 (2d Repl. Vol. 6); and (c) aggravated battery, § 40A–3–5, N.M.S.A.1953 (2d Repl. Vol. 6). The second and third charges were submitted as lesser included offenses; no claim is made that they were not lesser included offenses.

The double jeopardy claim is based on *State v. Castrillo*, 90 N.M. 608, 566 P.2d 1146 (1977). *Castrillo* states:

Henceforth, when a jury announces its inability to reach a verdict in cases involving included offenses, the trial court will be required to submit verdict forms to the jury to determine if it has unanimously voted for acquittal on any of the included offenses. The jury may then be polled with regard to any verdict thus returned.

*Castrillo*, supra, was decided subsequent to defendant's conviction. There is a question as to whether the change in law announced in *Castrillo* applies to defendant's case. We do not decide this question. Defendant raised the issue concerning inquiries of the jury before the mistrial was declared in the first trial. Accordingly, we assume that *Castrillo* applies.

When the jury reported that it was deadlocked and could not agree upon a verdict,

defendant requested that interrogatories be submitted to the jury to determine on which of the charges it could not agree. Because the trial court refused to do so, defendant contends that under *Castrillo* his second trial should have been limited to the least of the lesser included offenses—the charge of aggravated battery. We disagree.

Upon receiving the report that the jury was deadlocked, the trial court inquired if the deadlock applied to both counts. The answer was yes. The trial court then inquired if the deadlock applied to each charge of the indictment. The following exchange occurred:

Foreman: To each charge? Yes. Yes.

Court: O.K.

Foreman: Yes. Not each element of each charge.

Court: Not each element of each charge but each charge?

Foreman: Right.

The foregoing shows the jury at the first trial could not reach a verdict on any of the charges submitted to the jury. Defendant had not been acquitted of any charges. That this fact was determined by direct inquiry rather than by written interrogatories does not aid defendant. Because there was no acquittal, reprosecution on all the charges was not barred by the principles of double jeopardy.

The convictions are reversed; the cause is remanded for a new trial on all charges.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.