STATE of Iowa, Appellee,

v.

Daniel Sullivan ELAM, Appellant.

No. 67714.

Supreme Court of Iowa.

Dec. 22, 1982.

James F. Whalen, Dunbar, Dunbar & Whalen, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and David H. Correll, Black Hawk County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

CARTER, Justice.

Defendant Daniel Elam appeals from his conviction of first-degree murder in violation of Iowa Code section 707.2 (1979). He contends the trial court erred in the following particulars: (1) in excluding expert testimony offered in support of his claim of justification, (2) in instructing the jury that it might infer malice from the use of a dangerous weapon, (3) in admitting a witness's testimony concerning a threat made to her by a person who was with defendant at the time of the murder, and (4) in not directing a verdict of acquittal for defendant on the issue of justification. We consider all of these claims and affirm defendant's conviction.

Defendant was tried for the murder of Chris Stevens, alleged to have been committed in Waterloo, Iowa during the early morning hours of February 1, 1981. The evidence offered at trial revealed that on the previous evening defendant had been with Lynette Lee and Vickie Barrett at a Waterloo bowling alley. The bowling concluded about 9:30 p.m. and following a trip to purchase some marijuana the three had assembled at Lynette's house on Oak Street in Waterloo. Sometime thereafter, Chris Stevens arrived at Lynette's house.

Stevens, who had been keeping company with Vickie Barrett for approximately two years, proceeded to interrogate her as to where she had been that evening. This conversation culminated with Stevens striking Vickie in the face. When Lynette Lee threatened to call the police, Stevens left. On his way out he broke the glass in the storm door causing a splinter of glass to lodge in the defendant's eye. Later, when defendant left Lynette Lee's house, he saw Stevens standing near a window. At this time Stevens accused defendant of being involved with Vickie, which defendant denied. As defendant moved away, Stevens informed him that he (Stevens) knew where defendant lived.

Defendant then returned to the apartment complex where he resided. He stopped in at Dianne Mims's apartment where he discussed his fear of Stevens with Dianne Mims and with defendant's aunt. Later, defendant went to his grandfather's apartment in the same apartment complex and unsuccessfully attempted to borrow a shotgun. He then asked his aunt for a pistol which she claimed not to have.

Still later in the evening, Ferman Jones, an acquaintance of the defendant, arrived outside the housing project. At this time defendant, who was listening through an open door, heard Chris Stevens ask Jones "Did you see a keen face guy come through here?" Defendant testified at the trial that at this point he believed that Stevens was after him and his reaction was "I have to face this guy. I have to face him. I can't be running. I have to face him and see what he wants." Defendant testified that he then approached Stevens with an ax and asked him "Why you chasing me, man?" Stevens replied, "That [the ax] ain't going to do you no good." Defendant then retreated to his aunt's apartment. Stevens approached the door of that apartment and invited defendant to come out.

Defendant did not come out at Steven's request and ultimately Stevens left the area. Ferman Jones then came to defendant's aunt's apartment. He offered to persuade defendant's grandfather that he should give defendant his shotgun. Defendant agreed to this course of action and Jones was successful in obtaining the weapon. Defendant and Jones then proceeded outside the apartment complex armed with the shotgun. Outside the building they encountered Stevens. The defendant testified that when Stevens ran toward him defendant tried to fire the shotgun but it did not go off. Stevens then turned, raising his hands, and Jones yelled at the defendant to look out. At this point the defendant successfully fired the shotgun killing Stevens. Defendant testified that he believed Stevens had a weapon but that after the shooting it was ascertained that this was not so.

Following the shooting, Ferman Jones returned to defendant's grandfather's apartment where he washed the shotgun and concealed it under a mattress. Defendant returned to Dianne Mims's apartment and

changed clothes. Defendant and Jones then left the apartment complex. Later, but still during the early morning hours of February 1, defendant and Jones returned to the apartment complex where the defendant stayed at the apartment of Jones's common-law wife. Later defendant traveled to St. Louis where he remained until sometime in April when he voluntarily returned to Waterloo and gave himself up to police.

I. *Exclusion of Expert Testimony Relating to Defendant's Fear or Apprehension.* The first legal issue which we consider is defendant's claim that the trial court erred in excluding the expert psychological testimony of Dr. Sannito, a clinical psychologist. In preparation for his defense of justification pursuant to Iowa Code section 704.6 (1979), the defendant was examined by Dr. Sannito for four hours while incarcerated in the county jail. Dr. Sannito prepared a written report which concluded that the defendant's life was "dominated by an ever-present fear." The report also indicated that personality tests administered to the defendant indicated an "inordinate wariness" and "an unusual fear of death." The State moved in advance of trial to exclude the testimony of Dr. Sannito on the ground that his testimony would be irrelevant to the issue of justification. The trial court sustained the State's motion. The defendant made an offer of proof that Dr. Sannito would testify in substantial conformity with his written report.

The defendant claims on appeal that it was error to exclude Dr. Sannito's testimony because it would have been relevant and material to the issue of whether he believed he was in danger at the time of the shooting. In support of this contention the defendant relies on *State v. Brown,* 91 N.M. 320, 323, 573 P.2d 675, 678 (N.M.Ct.App. 1977), *cert. denied,* 436 U.S. 928, 98 S.Ct. 2826, 56 L.Ed.2d 772 (1978). There, the defendant was charged with shooting a police officer with intent to kill. The defendant tendered the testimony of a social psychologist concerning perception by minority groups that police are a threat. The ultimate opinion rendered by the witness, how-

ever, was tied to the defendant's apprehension in the particular circumstances which he faced at the time of the shooting. The trial court excluded the testimony and that ruling was held to be error.

Based on the *Brown* decision and the general test of relevancy the defendant argues that he should have been permitted to show that he was "extremely wary, and unusually prone to fear." We disagree with this contention for two reasons. First, unlike the evidence offered in *Brown,* the offer of proof in the present case is in no way related to the situation which faced the defendant at the time of the shooting. Secondly, the test of justification is both subjective and objective. The actor must actually believe that he is in danger and that belief must be a reasonable one. 4 J. Yeager and R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 82 (1979). Defendant was therefore required to show an actual, reasonable fear under the circumstances which he faced. Evidence of an inordinate fear does not satisfy this requirement. *See State v. Bess,* 53 N.J. 10, 17, 247 A.2d 669, 672 (1968) (expert psychological testimony that defendant would overreact because of emotional instability properly excluded); *see also State v. Matthews,* 301 Minn. 133, 136, 221 N.W.2d 563, 565 (1974).

Furthermore, we have consistently held that the determination of relevancy is a matter within the discretion of the trial court and this court will interfere only upon a showing of an abuse of that discretion. *State v. Windsor,* 316 N.W.2d 684, 688 (Iowa 1982); *State v. Zaehringer,* 280 N.W.2d 416, 419–20 (Iowa 1979). Under the circumstances which were presented, the trial court appears to have acted well within its discretion.

II. *Instructions on Inferences of Malice and Premeditation.* Defendant also contends that the trial court erred by giving, over defendant's objection, the following jury instruction:

> You are instructed that a shotgun is a dangerous weapon.

You are further instructed that when a person intentionally uses a dangerous weapon against another and death results, *you may, but are not required to, infer* that the killing was with malice aforethought.

You are also instructed that if a person, with opportunity to deliberate, intentionally uses a dangerous weapon against another and death results, *you may, but are not required to, infer, in the absence of evidence to the contrary,* that such weapon was used with malice, deliberation, premeditation and a specific intent to kill.

(Emphasis added).

The defendant asserts that this instruction violates his constitutional right to due process by shifting the burden of proof as it "creates the possibility that a reasonable juror could believe that the instruction relieved the State of the burden of proving [he] acted with malice." The defendant acknowledges that a similar instruction before this court has withstood a constitutional due process challenge in *Henderson v. Scurr,* 313 N.W.2d 522, 526 (Iowa 1981), but he submits that the instruction in the present case "differs significantly" from the one given in *Henderson,* arguing it does not contain an additional paragraph found in *Henderson* which told the jury that the inference of malice from the use of a dangerous weapon is not conclusive, and may be considered with all the evidence in the case. *Id.* at 524.

■ The proper inquiry, as pointed out by the State, is whether the instruction fully apprised the jury of their option to reject the inference of malice, i.e., whether it clearly conveyed to the jury that the inference was permissive. *See Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (distinguishing a permissive inference from a mandatory presumption and discussing its effect on burden of proof). It would appear the instruction properly conveyed this option, and thus did not unconstitutionally shift the burden of proof. This position is supported by the fact that the term "infer" rather than "presume" was used, *see State v. Rinehart,* 283

N.W.2d 319, 321–23 (Iowa 1979), *cert. denied,* 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980) ("right to infer" language "fully apprised" the jury of their option to reject the inference), and by the trial court's characterization of the inference, stating: "you may, but you are not required to infer," (such language would appear equivalent to the last paragraph in *Henderson,* 313 N.W.2d at 524).

■ In addition, defendant argues that the burden of proof as to deliberation, premeditation, and specific intent to kill was impermissibly shifted by use of the language "in absence of evidence to contrary." This court has previously held that such language, while surplusage, does not unconstitutionally shift the burden of proof to the defendant. *See State v. Jeffries,* 313 N.W.2d 508, 509–10 (Iowa 1981). We continue to adhere to this view.

III. *Admissibility of Threats by Ferman Jones.* At trial, Pat McNamee, a resident of the apartment complex where the shooting occurred testified, over defendant's hearsay and relevancy objections, that at about 9:30 a.m. the morning of the shooting Ferman Jones asked her what she had told the police about him and threatened to come "back later to get rid of her." The trial court admitted this testimony over defendant's objections on hearsay and relevancy grounds.

The State seeks to meet the defendant's hearsay objection on two grounds. It is claimed that evidence of the threat to the witness by Ferman Jones was not offered to prove the truth of an out-of-court assertion but rather to show that the threat was in fact made. This circumstance, it is claimed, removes the evidence from the definition of hearsay. *See State v. Leonard,* 243 N.W.2d 887, 890 (Iowa 1976) (threat held to be relevant evidence without regard to its truth or falsity). In addition, it is urged by the State that the alleged threat was a statement by a co-conspirator, made during the course of the conspiracy and thus admissible under our holding in *State v. Dewey,* 220 N.W.2d 629, 631 (Iowa 1974).

If the hearsay ground were the only objection made to this evidence, we would uphold the trial court's overruling of the objection on the ground that the statement was not offered to show the truth of the matter asserted and thus was not hearsay. *Leonard,* 243 N.W.2d at 890. However, in order to meet the additional objection as to the relevancy of the threat made to the witness by Ferman Jones, it is also necessary that we consider the State's co-conspirator argument. If Jones was a co-conspirator, we believe that the threats would indicate a consciousness of guilt imputable to both parties to the conspiracy because the threat could be found by the trier of fact to have been made in furtherance of a common purpose. *Dewey,* 220 N.W.2d at 631.

■ In seeking to defeat the State's claim that a conspiracy existed between Jones and defendant, the latter relies on an alleged insufficiency of evidence as to Jones's conscious complicity in the shooting of Stevens. We need not decide this issue because we conclude that there is much stronger support for a finding of conspiracy between Jones and defendant to effect suppression of material evidence of the crime (hiding of the gun), and concealment of defendant from the police (sheltering defendant in Jones's wife's apartment). The threat to the witness is another logical step in the efforts by defendant and Jones to obstruct prosecution of the defendant after the commission of the crime. Evidence of a conspiracy to accomplish this purpose is sufficient to render the threat to the witness admissible against defendant. The trial court did not err in admitting this evidence.

■ IV. *Denial of Directed Verdict on Issue of Justification.* In his final assignment of error, the defendant contends the evidence was insufficient to prove beyond a reasonable doubt that he did not act with justification in shooting Stevens. When reviewing such a claim, the evidence is viewed in the light most favorable to the State, all inferences that are fairly and reasonably deducted from the evidence are accepted, and all the evidence, not just that supporting the verdict, is considered. Furthermore, the verdict will be upheld if supported by "substantial" evidence, i.e., evidence which would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *State v. Epps,* 322 N.W.2d 288, 289 (Iowa 1982) (citations omitted); *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980).

■ To establish there was no justification, the State had to prove only one of the following:

(1) the defendant was the provocator in initiating or continuing the difficulty which resulted in the shooting; or

(2) the defendant did not believe he was in imminent danger of death or injury and that use of force was not necessary to save him; or

(3) he did not have reasonable grounds for such belief; or

(4) the force used was unreasonable.

*State v. Beyer,* 258 N.W.2d 353, 356 (Iowa 1977); *State v. Mayes,* 286 N.W.2d 387, 392 (Iowa 1979). Based on these considerations it would appear that the jury could well have found that the necessary elements of justification were absent.

■ While defendant did not initiate the difficulty with Stevens, the jury could have concluded the defendant was the provocator in continuing the difficulty which resulted in the shooting. In addition, the jury could have concluded that an alternative cause of action was available to the defendant or that the force used was unreasonable. We have considered all issues presented and find no basis for a reversal of defendant's conviction.

AFFIRMED.