**STATE of Iowa, Appellee,**

v.

**James E. FLORIE, Appellant.**

**No. 85–1014.**

Supreme Court of Iowa.

Aug. 19, 1987.

Barry M. Anderson, Keokuk, for appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl and Bruce C. McDonald, Asst. Attys. Gen., and Gordon Liles, Asst. Co. Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

CARTER, Justice.

Appellant, James E. Florie (defendant), appeals from his conviction of murder in the second degree. Because the killing occurred in 1977, the information alleged an open charge of murder under Iowa Code section 690.1 (1977). The offense of murder in the second degree was punishable under Iowa Code section 690.3 (1977). Formal charges for the offense were first brought against defendant in an information filed September 19, 1977. That information was dismissed on November 7, 1977, but the charge was reinstated by an information filed October 29, 1984.

The more than seven-year delay in bringing defendant to trial has been made the subject of a constitutional speedy trial issue on this appeal. Other issues raised on the appeal relate to (a) the sufficiency of the evidence to support defendant's conviction; (b) the timeliness of the information under pre–1978 law; (c) the admissibility of certain statements on the basis that they had been uttered by co-conspirators in the course of a conspiracy; (d) the propriety of allowing two witnesses to testify for the State who were not listed in the minutes of evidence at the time the trial commenced; (e) the failure of the court to give certain jury instructions requested by defendant; (f) failure of the court to disqualify the prosecuting attorneys from participating in the trial; and (g) miscellaneous rulings involving admissibility of evidence.

The court of appeals considered all of the foregoing issues and affirmed defendant's conviction. In reviewing the decision of the court of appeals, we reach a similar result.

The body of James Varner was discovered near the Des Moines River in Lee County on May 29, 1977. His death was attributed to a blow or blows to the head and a large abdominal wound. A criminal investigation ensued by the Lee County Sheriff's Office and the Iowa Bureau (now Division) of Criminal Investigation. The investigation focused on three suspects: Michael Burrows, Jack Hall, and defendant. Only defendant was charged in the September 1977 information. In moving to dismiss the information on November 7, 1977, the State urged, successfully, that dismissal was in the interests of justice because certain material witnesses had changed their stories and other witnesses could not be located. Defendant resisted the granting of the dismissal order unless it was with

prejudice.[1] The court granted the State's request, but expressly declined to consider the effect of its ruling on a claimed denial of right of speedy trial in the event defendant was subsequently recharged.

The October 1984 information which reinstated murder charges against defendant in the Varner killing also charged Burrows and Hall with the crime. Separate trials of the three defendants were ordered. At defendant's trial, the State offered testimony of defendant's sister that she was present at Burrows' residence when Burrows and Hall discussed killing Varner in order that the latter not testify against Burrows in a pending criminal prosecution. Other evidence presented indicated that on May 29, 1977, the date that Varner's body was found, defendant and Hall went to the residence of defendant's sister and her husband. Defendant used a hose to wash his automobile both inside and out, soaking the vehicle's upholstery in the process.

After washing the car, Hall and defendant watched the 5 p.m. news on television. The first story on the newscast was a report of the Varner murder. Evidence was presented that defendant became visibly agitated and told his brother-in-law to tell the police if they asked that he was fishing at the "A" ditch near Quincy, Illinois, at the time Varner was killed. A witness testified that he accompanied the defendant and Hall to the "A" ditch subsequent to the time that Varner's body was found in order that they might wet their fishing tackle in the event it was examined by law enforcement officials.

Other evidence was presented that defendant and Hall arranged to have the tires removed from defendant's car and subsequently burned. At the time they were removed, those tires were in better condition than the replacement tires installed on the vehicle. Evidence was offered of comments by Hall to defendant that the latter had sufficiently covered up tracks made by the discarded tires at some undesignated location. Two witnesses testified that they had heard defendant admit that he was involved in killing someone. Other facts significant to the issues on appeal will be set forth in connection with our discussion of the legal issues which have been raised.

## I. Denial of Constitutional Guarantee of Speedy Trial.

Defendant's first contention is that his constitutional right of speedy trial under the sixth amendment to the federal constitution was violated by the more than seven-year delay which ensued between the dismissal of the 1977 information and his trial on the 1984 information. As an alternative to that claim, in the event it is rejected, he asks the court to find that his right of due process was violated from the resulting delay and the prejudice engendered thereby.

Although none of defendant's arguments are expressly conditioned on the speedy trial provisions contained in article I, section 10 of the Iowa Constitution, analysis under the state constitution played a major role in the decision of the court of appeals which is the subject of our review. Consequently, we consider the speedy trial claim under both federal and state constitutions. We decline to consider issues involving a statutory guarantee of speedy trial because no such claim has been advanced by defendant at any stage of the appellate process. Accordingly, any reference to statutory speedy trial rights in our discussion is only for the purpose of comparison and illustration.

The court of appeals found no merit in defendant's claim that his federal sixth amendment rights had been violated. All members of that court agreed that any claims in this regard must be evaluated in light of the principles established in *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Under that standard, defendant's contentions were deemed to fail. Three members of the court of appeals concluded, however, that the court was required by article I, section

---

**1.** Pursuant to Iowa Code § 795.5 (1977) a criminal prosecution dismissed on motion of the State "shall not bar another prosecution for the same offense if the offense charged be a felony." *See, e.g., State v. Johnson*, 217 N.W.2d 609, 612 (Iowa 1974).

10 of the Iowa Constitution to employ an analysis involving the equivalent of a *Barker v. Wingo*[2] balancing test. The other three members of the court of appeals believed that the principles espoused in *MacDonald* should control the state constitutional question rather than the *Barker v. Wingo* principles.

We agree with the court of appeals' conclusion that defendant's sixth amendment right of speedy trial must be considered in light of *MacDonald*. The Court held in that case that the time between the "good faith" dismissal of pending criminal charges by the prosecution and the filing of the same charges at a later date is not to be considered in determining whether the delay in bringing the accused to trial has violated the right of speedy trial guaranteed by the sixth amendment. *MacDonald* recognized, however, that the period of delay between the two criminal presentations may be the basis of constitutional challenge under the due process clause of the fifth or fourteen amendments in the same manner as other cases of preaccusatorial delay. The court of appeals considered such due process claims and found them to be without merit. We agree with that conclusion. The issue is controlled, we believe, by our opinion in the appeal of defendant's accomplice, George William [Jack] Hall, which presented the same issue on substantially similar facts. *See State v. Hall*, 395 N.W.2d 640, 643–44 (Iowa 1986).

Defendant urges the court of appeals erred in applying the *MacDonald* test by concluding that the dismissal of charges in 1977 was undertaken in "good faith." He observes that if that action was not in good faith *MacDonald* would implicitly permit a sixth amendment claim to be asserted based on a period of delay measured from the filing of the original charge. As a basis for that contention, he suggests that the State dismissed the case at that time in order to gain a tactical advantage.

In considering defendant's contention, we note that in this jurisdiction the State is held to a rather rigid statutory time period for bringing its case to trial. If not complied with, this may result in a dismissal with prejudice.[3] In situations where the State does not have enough evidence to go to trial, it soon faces a dilemma in which dismissal without prejudice may, indeed, amount to a tactical advantage. Notwithstanding that consequence, we have suggested that dismissals for purposes of "facilitating the state in gathering evidence, procuring witnesses, or plea bargaining" should not preclude reinstatement of the same charges at a later date. *See State v. Fisher*, 351 N.W.2d 798, 801 (Iowa 1984); *State v. Johnson*, 217 N.W.2d 609, 612–13 (Iowa 1974).

The language quoted from *Fisher* and *Johnson* may be unduly broad. We recently indicated that the State should not be accorded an unfettered avenue of escape from a statutory speedy trial predicament engendered by its own mishandling of a criminal case. *See State v. Gansz*, 403 N.W.2d 778, 780 (Iowa 1987). We do not believe, however, that such mishandling has been demonstrated in the present case. Moreover, defendant's speedy trial argument on this appeal is limited to constitutional claims. For purposes of a *MacDonald* analysis, we cannot find that the State acted in bad faith in dismissing the case in 1977.

A full record was made at the time of the 1977 dismissal concerning the change in testimony by one or more material witnesses. It does appear that the testimony of at least one of these witnesses was critical to the State's case. While the testimony of this witness at the March 1985 trial may not have been all that the State hoped it would be, it was, nevertheless, substantial-

---

2. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The *Barker* test involves balancing the factors of length of delay, defendant's assertion of his right to speedy trial, resulting prejudice, and the reason for the delay.

3. This time period under present law is 90 days as provided in Iowa R.Crim.P. 27 enacted in 1976 Iowa Acts ch. 1245, § 1301 effective January 1, 1978. At the time that charges were pending against defendant in 1977, this period of time was 60 days as provided in Iowa Code § 795.2 (1977).

ly more favorable to the State's case than it was indicated to be at the 1977 dismissal hearing. Under the circumstances, we accept the State's contention that the 1977 dismissal was in good faith and the refiling of the murder charge against defendant was based on a change of circumstances favorable to the State's case.

■ We disagree with the views of those members of the court of appeals who concluded article I, section 10 of the Iowa Constitution requires that a *Barker v. Wingo* analysis be applied to the "on and off and on again" prosecution in the present case. In rejecting a similar argument based on the federal constitution, the Court in *MacDonald* concluded that the sixth amendment speedy trial guarantee is aimed at minimizing the disruption of life caused by the presence of pending and unresolved criminal charges. *MacDonald,* 456 U.S. at 8, 102 S.Ct. at 1502, 71 L.Ed.2d at 704. The Court concluded that following the dismissal of charges any remaining consequences involving disruption of lifestyle and exposure to public obloquy, stress and anxiety is no greater on the person who had been charged than it is on any person subject to an open and continuing criminal investigation. The Court therefore determined that time intervals following such dismissals should be treated in a constitutional sense as would any pre-accusatorial delay. *Id.* Because we conclude the same intent and purpose should be attributed to article I, section 10 of the Iowa Constitution, defendant's case presents no stronger claim to relief under the speedy trial guarantees of the state constitution than it does under the sixth amendment.

## II. *Sufficiency of the Evidence.*

Defendant argues that the evidence presented against him is based primarily on speculation, conjecture, and suspicion. He contends the evidence is legally insufficient to sustain the verdict of the jury finding him guilty of the offense of murder in the second degree. The court of appeals rejected this contention.

■ To successfully challenge the sufficiency of the evidence to support a conviction, it must be shown that, based upon a consideration of all of the evidence presented at trial, a rational jury could not conclude beyond a reasonable doubt that the convicted person committed the alleged acts of criminal conduct and all material elements thereof. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560, 571 (1979); *State v. Mayberry,* 411 N.W.2d 677, 681 (Iowa 1987); *State v. Wilkens,* 346 N.W.2d 16, 20 (Iowa 1984).

■ Viewing the evidence in the light most favorable to the State, there are several facts which would support the jury's finding that defendant committed the offense either as a principal or aider and abettor. He was shown to be in close association with persons planning to kill Varner at or about the time of the offense. There was evidence that defendant acted to obliterate tire tracks at the scene of the crime, discarded the tires on his car, caused them to be burned, and acted in a somewhat unorthodox manner in hosing out the inside of his car. In addition to the foregoing circumstantial evidence, there is evidence that subsequent to the murder defendant made admissions indicating that he had played a role in the Varner killing. The court of appeals was correct in finding that a jury of rational persons could return a verdict finding defendant guilty of the offense of which he has been convicted.

## III. *Timeliness of the Filing of the 1984 Information Under Pre–1978 Law.*

Defendant urges that the information against him should have been dismissed because it was not filed within sixty days of the time he was held to answer as required by Iowa Code section 795.1 (1977). The court of appeals disagreed.

■ Because defendant did not elect to be tried under the revised criminal code, pre–1978 law applies to both the substantive and procedural aspects of the present prosecution. *See* Iowa Code § 801.5(1) (1983). The concept of being "held to an-

swer" in order to trigger the thirty-day period for filing an indictment or information under pre–1978 law was tied to (a) an order by a committing magistrate binding the charges over to a grand jury following a preliminary hearing, or (b) waiver of a preliminary hearing by the accused. *State v. Davis*, 259 N.W.2d 843, 845 (Iowa 1977). Defendant has failed to demonstrate that either of these events occurred in the present case so as to trigger the time limitations which are contained in section 795.-1. We find no merit in defendant's claim that the information was untimely under that statute.

IV. *Admissibility of Hearsay Statements Alleged to have been Uttered by Co-conspirators.*

In order to determine the admissibility of certain evidence sought to be offered by the State, the trial court held a hearing in advance of trial pursuant to Iowa Rule of Evidence 104(a). The subject of the hearing was whether statements made by Burrows and Hall were excluded by the hearsay rule. The State contended that the statements in question were those of "a coconspirator of a party during the course and in furtherance of the conspiracy" so as to be excluded from the definition of hearsay by Iowa Rule of Evidence 801(d)(2)(E). Defendant urges that the district court erred in its conclusion that the State offered sufficient evidence of a conspiracy at this hearing to permit introduction of statements to third persons by Burrows and Hall. The court of appeals rejected that contention.

The State urges that to sustain the admissibility of statements of co-conspirators under rule 801(d)(2)(E) it is only necessary that substantial evidence be found in the record which would support a finding that the declarant was a co-conspirator with the person on trial. In support of this contention, it relies on statements indicating a "substantial evidence" test in *State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976), and *State v. Blyth*, 226 N.W.2d 250, 269 (Iowa 1975). We believe that a substantial evidence test is more appropriately a standard for appellate court review of a trial court's

determination of whether a conspiracy has been shown. It is not a standard to be applied in determining that issue at the trial court level. It is ultimately the responsibility of the trial judge in such situations to find the facts necessary for the admissibility of the evidence. That task is not satisfied by merely noting that evidence has been presented from which a conspiracy *might* be found to exist.

■ This approach to the issue is the one which has been applied by the federal courts in dealing with Federal Rule of Evidence 801(d)(2)(E) which is similar to our Iowa rule. *See Bourjaily v. United States*, —— U.S. ——, ——, 107 S.Ct. 2775, 2778–81, 97 L.Ed.2d 144, 151–56 (1987); *United States v. Roe*, 670 F.2d 956, 963–64 (11th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982); *United States v. James*, 590 F.2d 575, 581 (5th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978). The standard of proof applied by federal courts for determination of this preliminary issue of fact by the trial judge is a preponderance of evidence. *Bourjaily*, —— U.S. at ——, 107 S.Ct. at 2778–79, 97 L.Ed.2d at 151–53; *United States v. Terry*, 702 F.2d 299, 320–21 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *United States v. Radseck*, 718 F.2d 233, 235–36 (7th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984); *Bell*, 573 F.2d at 1044. We agree that this should be the standard of proof under Iowa Rule of Evidence 801(d)(2)(E). Our decisions in *Kidd* and *Blyth* are not necessarily contrary to that belief. Trial court findings of conspiracy by a preponderance of the evidence were implicit in the trial court's rulings in those cases admitting the challenged evidence. On our appellate review, we upheld those implicit findings based on our conclusion that they were supported by substantial evidence in the record. The trial court's carefully prepared ruling in the present case which was issued subsequent to the rule 104 hearing demonstrates that it admitted the challenged statements because it believed it

was more likely than not a conspiracy existed.[4]

Several of the challenged statements relate entirely to the concealment of evidence after the murder had been committed. In *State v. Elam*, 328 N.W.2d 314, 319 (Iowa 1982), it was determined that a conspiracy after the fact to conceal a crime or to further the escape of a perpetrator will support the admissibility of co-conspirator statements under rule 801(d)(2)(E) tending to establish the existence of the after-the-fact activities. Those activities constituted evidence relevant to the primary crime because they reveal guilty knowledge of the accused.

■ *Elam* does *not* stand for the proposition that proof of a conspiracy by accessories after the fact, without more, can serve to render admissible statements made by the after-the-fact conspirators concerning the primary crime. In order for statements of that type to be admissible under rule 801(d)(2)(E), a conspiracy to commit the primary crime must first be established. In our review of the district court's rulings on evidence, we believe it so limited the application of *Elam*.

■ Evidence relied on in determining the existence of a conspiracy must include some proof independent of the co-conspirator's statement which is the subject of the evidentiary ruling. *Kidd*, 239 N.W.2d at 864; *Blyth*, 226 N.W.2d at 269. As a leading commentator has observed, however, "[a] conspiracy mounted and carried on without words is difficult to imagine." McCormick, *Evidence* § 267, at 792 n.37 (E. Cleary ed. 1984). Many times these statements will be uttered under circumstances making the act of communication an integral part of the concerted action which constitutes the conspiracy. *United States v. Hassell*, 547 F.2d 1048, 1052 (8th Cir.1977). Exclusion of such evidence would deny the prosecution the right to prove the conspiracy by means of the very acts of which it is comprised. The author-

itative case under Federal Rule of Evidence 801(b)(2)(E) is *Bourjaily* in which the Court holds it is not necessary to completely ignore the co-conspirator's statements in considering whether a conspiracy has been sufficiently established for purposes of admitting the statement in evidence as to the primary crime charged. Viewing the record in accordance with these considerations, we conclude that it is sufficient to sustain the trial court's conclusion that Burrows, Hall and defendant were co-conspirators in carrying out the primary crime.

### V. *Allowance of Testimony by Witnesses Not Listed in Minutes of Evidence When Trial Commenced.*

Defendant's trial began on March 19, 1985. On March 22, the State filed a motion pursuant to Iowa Code section 780.11 (1977) for leave to introduce the testimony of Marty Long and Karen Long, neither of whom had been listed as witnesses in the minutes of testimony appended to the trial information. Section 780.11 (1977) which applies to this issue provided:

> Whenever the county attorney desires to introduce evidence to support the indictment, of which he shall not have given four days' notice because of insufficient time therefor since he learned said evidence could be obtained, he may move the court for leave to introduce such evidence, giving the same particulars as in the former case, and showing diligence such as is required in a motion for a continuance supported by affidavit.

Although the required affidavits were not filed until March 25, 1985, the district court, upon hearing the State's contentions, determined that if such claims were supported by affidavit the two additional witnesses would be allowed to testify.

As a condition for granting the State's request, the court granted defendant a one-week continuance in order to investigate the newly proffered evidence. The court also required the State to give defendant

---

4. Defendant raises no issue on appeal concerning whether the challenged statements were made in the course of or in furtherance of the conspiracy which the trial court found to exist.

We therefore need not consider those additional prerequisites to admissibility under rule 801(d)(2)(E).

access to the names and addresses of all persons known to have attended the party at which Marty Long and Karen Long allegedly heard defendant make admissions in regard to the Varner killing.

█ Defendant urges that notwithstanding the grant of continuance, the district court abused its discretion in permitting these witnesses to testify. The court of appeals disagreed. So do we. The effect of section 780.11 of the prerevised criminal code is explained in *State v. Sevcik,* 239 N.W.2d 571, 573 (Iowa 1976). In that case, we make clear that the statutory scheme is not primarily an exclusionary mechanism. *Id.* It is the intent of the legislation to procedurally assure adequate notice of the additional testimony by giving the defendant an unconditional right to a continuance. Defendant was granted that right by the trial court and has failed to demonstrate that the time allowed was insufficient to permit him to prepare to confront the testimony of the additional witnesses.[5]

### VI. *Failure to Give Defendant's Requested Jury Instructions.*

Defendant argues that error was committed by the trial court's failure to give certain jury instructions requested by him. His primary assertion in this regard is that a limiting instruction should have been given on the jury's consideration of circumstantial evidence similar to the language of Uniform Jury Instruction No. 501.13 prior to our decision in *State v. O'Connell,* 275 N.W.2d 197 (Iowa 1979). In particular, defendant wanted the jury to be told that in order to warrant a conviction on circumstantial evidence alone "the facts proved must be inconsistent with any rational theory of [defendant's] innocence."

The court of appeals determined this claim adversely to defendant. We reach a similar result. To the extent that Iowa Code section 801.5(1) (1983) renders pre-

1978 substantive and procedural law applicable to defendant's trial, this does not mandate the giving of former uniform jury instructions, which this court has declared to be inappropriate. Our opinion in *O'Connell* advances several arguments why that instruction should not be given in criminal cases.

█ Defendant also argues that the trial court should have given his requested instructions concerning the effect of the lapse of time on the credibility of testimony. We believe that the jury was adequately advised as to this concern by the general instructions on witness credibility given by the trial court. A party cannot posit error on the fact that instructions do not present a concept in exactly the same language in which the party wishes to have it presented. *State v. Horn,* 282 N.W.2d 717, 717 (Iowa 1979).

Finally, defendant urges that the instructions did not adequately distinguish between aiding and abetting as an accessory after the fact and aiding and abetting the primary crime. At defendant's request, the trial court modified its instructions to provide that "subsequent conduct may be considered only as it may tend to prove the defendant's prior encouragement or participation but not as the sole basis for establishing defendant's guilt." We believe this change of language was adequate to satisfy defendant's concerns. We have considered the assignment of error based upon refusal to give proposed instructions and find no basis for reversing on these claims.

### VII. *Failure of the Court to Prohibit the Witness, Harold Meyers, Jr., from Testifying.*

Defendant urges that the trial court committed reversible error in permitting the witness, Harold Meyers, Jr., to testify for the State. The basis of this claim is that Meyers admitted that he had committed perjury during an earlier proceeding which

---

5. The testimony of Karen Long is also challenged on the ground that it was the product of an unduly suggestive photographic identification of defendant. Viewing that identification in the totality of circumstances, *see State v.*

*Mark,* 286 N.W.2d 396, 405 (Iowa 1979), we do not find that the procedure was such as to render her identification of defendant unreliable.

ended in a mistrial. The basis of the perjury at the earlier trial was a written statement which Meyers had given to defendant's counsel disclaiming knowledge of certain events. After Meyers testified concerning those events at the prior trial, he was confronted with the statement and denied that he had given it. He later admitted that such denial was deliberately false.

At the second trial, Meyers testified to the same events, admitted that he had given the statement in question to defendant's counsel, but denied that statement was correct. The facts surrounding Meyers' perjury at the former trial were fully developed before the jury. Based on the facts stated, the court of appeals concluded there was no basis for the district court to prohibit Meyers from testifying. He purported to have knowledge of the facts and his credibility was an issue for the jury. We agree. The district court did not err in permitting him to testify.

As a corollary to his challenge to Meyers' testimony, defendant argues that counsel for the State should have been disqualified from participating in the second trial. The basis for that claim at the time it was advanced in the district court was that defendant intended to call counsel for the State as witnesses at the second trial in order to develop the nature of Meyers' perjury at the first trial. As we have noted, Meyers' perjury at the first trial was completely unfolded before the jury without the necessity of involving counsel for the State. Defendant made no effort to call the State's counsel as witnesses at the second trial. Consequently, the factual basis for defendant's motion to disqualify their participation never developed.

VIII. *Miscellaneous Rulings on Evidence.*

Other miscellaneous objections to evidence advanced by defendant were considered and rejected by the court of appeals as a basis for reversing the conviction. We reach a similar conclusion. Foremost among these claims is the contention that the trial court erred in permitting the testimony of Judge Leo Altmix of Quincy, Illinois. Judge Altmix testified with respect to the appearance by Burrows and Varner in his criminal court and later facts which led to Burrows and Varner being charged with shooting out windows at the Judge's home. Defendant claims this evidence lacks relevancy and materiality. We disagree.

Under the State's theory of the case, the criminal charges against Burrows and Varner were the motive for the Varner killing. Judge Altmix's testimony was relevant and material in the development of the conspiracy by Burrows, Hall and defendant with respect to that offense. There was no error in connection with its admission.

We have considered all issues presented and find no basis for disturbing the judgment of the district court.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.