# IN THE COURT OF APPEALS OF IOWA

No. 23-1363
Filed October 2, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEMETRIUS RAY HOWARD,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark R. Lawson,

Judge.

A criminal defendant appeals his convictions for first-degree murder and

felon in possession. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.

Heard by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

"The bitch ran up on me in the store, bro, and I killed him, bro.  There's nothing else to it, bro."  Demetrius Howard described killing Corey Martin that way in a recorded jail call.  And a jury found Howard guilty of first-degree murder and felon in possession of a firearm.  He appeals, challenging sufficiency of the evidence and claiming the district court abused its discretion when it admitted a statement he made about the missing "murder weapon."  We affirm.

## I.      Background Facts and Proceedings

Surveillance footage captured this 2022 homicide at a Davenport convenience store.  Over the course of about twenty seconds, Howard and Martin exchanged words, Martin punched Howard, one of Martin's two friends tried to pull them apart, Martin pushed Howard into a counter, and then Howard pulled a handgun out of his overalls and shot Martin.  Martin ran outside, and Howard followed him, shooting him at least once more before returning to the store's interior, brandishing the gun at Martin's friends, paying for his fountain pop, and leaving.  Martin was pronounced dead at the scene by paramedics.

Witness accounts of the scuffle and killing were generally consistent with the surveillance footage.  An eyewitness who did not know Howard or Martin told Martin's friends to "let them fight," meaning to let Howard and Martin fight one-on-one.  The eyewitness said that, after Martin's friend tried to pull them apart and he made the "let them fight" comment, no one touched Howard but Martin.  The witness observed that "[w]ithin ten seconds," Howard pulled a pistol out of his overalls.  And he saw Martin run out the door, with Howard following and shooting.

At some point after reentering the store, Howard told this same eyewitness that Martin and friends "tried to jump him."

One of Martin's friends also commented along the lines of "[l]et them fight it out one-on-one." Like the eyewitness, this friend and the one who pulled Howard and Martin apart testified they did not reengage at all with Howard after that. And both of Martin's friends testified that Howard brandished the gun at them after Howard came back into the store.

A deputy sheriff had a chance encounter with Howard at a local motel shortly after the shooting. In the deputy's words, he "stumble[d] upon" Howard while responding to an unrelated call for service. When the deputy approached Howard and asked about a car in the parking lot, Howard told him: "Bro, stop playing. You not here for that car, you here for me." Later in the conversation, Howard declared: "If you don't know why you're here for me, I'm gonna walk off." The deputy did not realize Howard had just perpetrated a homicide, so he told Howard he was there responding to another call. After completing the other call, the deputy radioed in Howard's vehicle and learned Howard was wanted for murder. Deputies arrested Howard, who told them: "Put the cuffs on me, let's go."

Inside Howard's motel room, law enforcement recovered ammunition for a .380 caliber handgun but not the gun itself. Officers also found a bullet inside the passenger door of Howard's car. A Division of Criminal Investigation (DCI) criminalist concluded four cartridges found inside and outside the store were all fired by the same weapon. As of trial, law enforcement had not found the firearm Howard used to kill Martin.

An associate state medical examiner performed an autopsy on Martin's body. There were a total of six gunshot wounds—three entrance and three exit. Two of the shots were likely survivable with prompt medical attention, but the fatal shot into Martin's back pierced his kidney, stomach, liver, diaphragm, and heart. The medical examiner concluded the cause of death was multiple gunshot wounds and the manner of death was ruled homicide.

The Scott County Attorney charged Howard with murder in the first degree, a class "A" felony in violation of Iowa Code section 707.2(1)(a) (2022), and felon in possession of a firearm, a class "D" felony in violation of section 724.26(1), enhanced as a habitual offender pursuant to sections 902.8 and 902.9.

In a recorded call from the jail, Howard commented on the facts of the case and the unavailability of what he termed the "murder weapon":

- "First of all, they wanna know where that gun at. . . . They wanna know what I did with the gun, bro. I'm not givin' you bitches no gun, bro. . . . You got me on fuckin' camera killing the nigga, bro. What else do you need, bro? . . . I'm not giving you nothin', bro."

- "That's the only thing they don't got is the murder weapon. . . . [B]ut you got the shell casings, bro, so you know what he got shot with."

- "It's not no fuckin' no extra ass story, bro, the bitch ran up on me in the store, bro, and I killed him, bro. There's nothing else to it, bro."

When the woman Howard was speaking to on the phone told him "I need you to stop talking about it," he responded: "Bro it's on camera. It's on camera, I can't tell you nothin' that they can't see, it's on camera."

At trial, Howard's sole witness was a forensic psychologist who opined that he was hypervigilant, "simply reacted," and didn't have time to contemplate his

actions the night of the murder. Howard stipulated he was prohibited from possessing a firearm. And the jury found him guilty as charged. He appeals.

## II. Standard of Review

"We review sufficiency-of-evidence claims for correction of errors at law." *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022). "[W]e are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence." *Id.* (quoting *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021)). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Jones*, 967 N.W.2d at 339 (citation omitted).

"Decisions to admit or exclude evidence under rule 5.403 are reviewed for abuse of discretion." *State v. Liggins*, 978 N.W.2d 406, 418 (Iowa 2022).

## III. Discussion

On appeal, Howard challenges the sufficiency of the evidence supporting his first-degree murder conviction in two ways and separately challenges the admission of the recorded jail call. We address each challenge and subpart.

### A. Sufficiency of the Evidence

Howard's sufficiency challenge has two subparts: first, he claims there was insufficient evidence to prove he was not justified in killing Martin; and second, that there was insufficient proof of the requisite mens rea.

### 1. Justification

Howard's first challenge asserts the State failed to prove killing Martin was unjustified. The justification defense in Iowa is statutory and authorizes

that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.

Iowa Code § 704.1. The defense is both subjective and objective. *State v. Elam*, 328 N.W.2d 314, 317 (Iowa 1982). And the State bears the burden to disprove justification once properly invoked by a criminal defendant. *State v. Ellison*, 985 N.W.2d 473, 479 (Iowa 2023).

On our review, we are convinced this was a case where the jury's verdict turned on resolution of competing inferences and implicit credibility findings generated by the jury's interpretation of mostly undisputed evidence. As Howard repeatedly remarked in his recorded jail call, the crime was "on camera." How to interpret the surveillance footage and sort out witness testimony about the events leading up to the homicide was for the jury to decide—not for us to second-guess on appeal. *See Cahill*, 972 N.W.2d at 27. And we think the district court summarized things well in denying Howard's motion for judgment of acquittal: "This was, essentially, a fistfight that escalated when the defendant pulled out a handgun. It's for the jury to determine whether under those facts the defendant feared a serious injury and if his response to that fear was reasonable." We conclude sufficient evidence supported the jury's conclusion Howard either did not reasonably believe the use of deadly force was necessary or used unreasonable force to respond to Martin punching him or Martin's friend pulling them apart—in other words, substantial evidence supports the jury's finding that Howard unreasonably escalated the confrontation. *See* Iowa Code § 704.1.

Iowa's justification defense does not authorize citizens to use a gun in a fistfight. *See, e.g.*, *State v. Duque*, No. 22-1041, 2023 WL 7014135, at \*4 (Iowa Ct. App. Oct. 25, 2023); *State v. Jenkins*, No. 21-1718, 2023 WL 4759448, at \*7 (Iowa Ct. App. July 26, 2023); *State v. Seley*, No. 22-0419, 2023 WL 2148800, at \*6 (Iowa Ct. App. Feb. 22, 2023); *cf. State v. Erlbacher*, No. 22-0299, 2023 WL 8447939, at \*4 (Iowa Ct. App. Dec. 6, 2023) (rejecting justification defense when offender "br[ought] a Chevy 1500 truck to finish a companion's fistfight"); *State v. Bowers*, No. 18-1827, 2020 WL 1310290, at \*2 (Iowa Ct. App. Mar. 18, 2020) (same for defendant who "brought a knife to a fistfight"); *State v. Hall*, No. 15-0628, 2016 WL 2748358, at \*4 (Iowa Ct. App. May 11, 2016) (same); *State v. Hall*, No. 11-1524, 2012 WL 4900426, at \*8 (Iowa Ct. App. Oct. 17, 2012) (same). And Iowa law certainly did not permit Howard to pursue Martin outside and shoot him in the back after Martin fled the store and no longer posed even an arguable threat. *Cf. State v. Campbell*, 214 N.W.2d 195, 197 (Iowa 1974) ("Once [the victim] had been disarmed, there was then no longer any threat of harm to defendant. There was no reason for him to strike [the victim], especially in the brutal manner he did . . . .").

Last in reviewing the justification issue, we note Howard's reliance on his trial expert's testimony regarding his alleged hypervigilance and that he "simply

reacted."[1]  But the jury could choose to believe all, some, or none of the evidence presented by Howard at trial.  *See State v. Hall*, 214 N.W.2d 205, 210 (Iowa 1974) (collecting cases for this proposition).  And in our standard of review, we are bound to "view the evidence in the light most favorable to the State"—not the defendant. *See, e.g.*, *Jones*, 967 N.W.2d at 339.  The expert's testimony does not support reversal.

## 2.  Mens Rea

Howard next contends that, given the short time between Martin punching him and the shooting, he could not have formed the necessary mens rea to support a first-degree murder conviction.  We disagree.

The jury was correctly instructed that "[m]alice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion."  Malice "does not have to exist for any particular length of time."  *State v. Lee*, 494 N.W.2d 706, 707 (Iowa 1993) (approving of jury instruction containing this proposition).  And premeditation and deliberation need exist "only but an instant before the fatal blow."  *State v. Wilson*, 11 N.W.2d 737, 754 (Iowa 1943). The jury was also correctly instructed it could infer malice, premeditation, and specific intent to kill from Howard's use of a dangerous weapon following the

---

[1] On appeal, Howard uses many of the statements he made to his expert for the truth of the matter asserted—for example, that he experienced an adrenaline rush when Martin punched him.  But Howard told the court below he was not offering these statements "for the truth of the matter asserted," and the court instructed the jury accordingly.  It would be fundamentally unfair for Howard to reverse course on appeal and use these statements as substantive evidence.  In any event, we must assume the jury rejected Howard's evidence in favor of competing evidence presented by the State.  *See Cahill*, 972 N.W.2d at 27.

opportunity to deliberate. *See State v. Green*, 896 N.W.2d 770, 779–82 (Iowa 2017) (surveying history and re-affirming use of this permissive inference).

Even if our review was confined to the first gunshot inside the store, there was opportunity to deliberate under our case law because Howard drew the handgun from his overalls, aimed, and shot Martin. *Cf. State v. Crisp*, No. 16-1252, 2017 WL 6033872, at *2 (Iowa Ct. App. Dec. 6, 2017) ("A reasonable jury also could have surmised from evidence of an argument, a scuffle, and an inference Crisp removed his gun from its holster that he did not act accidentally but rather willfully, deliberatively, premeditatively, and with the specific intent to kill Potter."). And there is no question Howard had opportunity to deliberate when, after the initial shot inside, he pursued Martin out the front door of the store and fired one or more additional shots into Martin's back as Martin fled unarmed and on foot. There was sufficient evidence on the mens rea elements.

### B. The "Murder Weapon" Admission

Next Howard renews a Rule 5.403 objection he made below concerning admission of his statement that law enforcement hadn't located the "murder weapon." The district court admitted the statement, reasoning it was "highly probative of what happened to the gun," "somewhat probative as to what happened in the store," and not substantially more unfairly prejudicial than probative.

"[T]he weighing of probative value against probable prejudice is not an exact science, [and] we give a great deal of leeway to the trial judge who must make this judgment call." *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006). We do not reverse merely because we might have ruled differently ourselves. *E.g.*, *State v. Tucker*, 982 N.W.2d 645, 656 (Iowa 2022).

We discern no abuse of discretion here. We agree with the district court that Howard's reference to the "murder weapon" was fairly compelling evidence he thwarted the weapon's discovery by police and persuasive evidence as to his intent at the time of the shooting. Of course the evidence was prejudicial: "all powerful evidence is prejudicial to one side. The key is whether the danger of *unfair* prejudice substantially outweighs the evidence's probative value." *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013). Here we conclude the evidence was not *unfairly* prejudicial, as it did not inflame the passions of the jury, invite improper considerations, or otherwise undermine the truth-seeking function of trial. *See id.* at 202–03. And whatever limited risk of unfair prejudice this evidence may have presented, it did not substantially outweigh the probative value of the evidence on the concealment or destruction of the murder weapon or Howard's intent at the time of the shooting—particularly when those were two of the only disputed issues at trial.

The most on-point case Howard marshals to support his claim is our unpublished decision in *State v. Kozak*, No. 16-0964, 2017 WL 6034639, at *5–6 (Iowa Ct. App. Dec. 6, 2017). There, the defendant used or agreed to some legal terminology when making inculpatory statements, and he made an argument similar to Howard's on appeal. *See Kozak*, 2017 WL 6034639, at *5–6. We rejected the claim in *Kozak*, explaining: "There could not have been more probative evidence of [the defendant's] state of mind than his own characterization of what he was thinking at the time of the shooting." *Id.* at *6. Suffice to say, the *Kozak* case does not help Howard. And we come to a similar conclusion as our sister panel when considering the claim here: it's good evidence someone intended to

commit a murder when he refers to the lethal instrument as a "murder weapon" and alludes to its destruction or concealment. *Cf. id.* To the extent Howard's argument is that the limiting instruction in *Kozak* differentiates it from this case, we are unpersuaded; Howard didn't ask for a limiting instruction below, and the court had no sua sponte duty to issue one.

The supreme court has reminded district courts to "sparingly" use Rule 5.403 to exclude relevant evidence from the jury's consideration. *See State v. Buelow*, 951 N.W.2d 879, 889 (Iowa 2020). The district court's ruling here is consistent with that directive, and we see no reason to think this is the rare case where the court abused its wide discretion.

**AFFIRMED.**