# IN THE SUPREME COURT OF IOWA

No. 11–1516

Filed March 8, 2013

**STATE OF IOWA,**

Appellee,

vs.

**DENISE LEONE FREI,**

Appellant.

---

Appeal from the Iowa District Court for Iowa County, Denver D. Dillard, Judge.

Defendant appeals from her conviction for first-degree murder. **AFFIRMED.**

Wallace L. Taylor, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber and Douglas D. Hammerand, Assistant Attorneys General, Timothy D. McMeen, County Attorney, and Lewis C. McMeen, Assistant County Attorney, for appellee.

**HECHT, Justice.**

The defendant killed her longtime boyfriend. At trial she raised a defense of justification based on evidence of battered women's syndrome and a defense of insanity based on various diagnoses including depression and an anxiety disorder. She was convicted of first-degree murder. On appeal, she alleges the district court erred in denying her motion for mistrial and by giving improper jury instructions on justification, insanity, and reasonable doubt. Finding no error in the record, we affirm the conviction.

### I. Background Facts and Proceedings.

In response to a 911 call shortly before 2:00 a.m. on July 19, 2009, police found Denise Frei sitting on the front porch of the home she shared with Curtis Bailey in Marengo, Iowa.[1] She had blood on her shirt and hands. Inside, Bailey's dead body lay on the living room floor, beaten severely with blunt objects. Frei told the police she had been upstairs and overheard a drug deal "gone bad" and then found Bailey's body. Later, however, she admitted that she had killed Bailey with the help of her eighteen-year-old son and his girlfriend.

Frei was charged with first-degree murder. At trial, she relied on defenses of justification and insanity. She testified that Bailey subjected her to humiliating and degrading emotional, verbal, and sexual abuse and that he threatened to kill her children and grandchild if she ever left him. She described Bailey as an extremely jealous and controlling person who checked her sales receipts after shopping trips to see if her purchases had been rung up by a male cashier. If the receipts evidenced the involvement of a male cashier, Bailey forced her to return the items

---

[1]Frei described Bailey as her common law husband.

for a refund. He allegedly cut her off from her family, including her adult sons and her grandchild. Frei testified that she had tried to leave Bailey at least once and had talked about it on other occasions but that he had threatened to slit the throats of her children and grandchild if she did, and that he had told her that even if she killed herself, he would still harm her family. She testified that she tried to kill Bailey on three previous occasions by giving him doses of morphine and insulin.

Frei devised a plan in early July 2009 to get Bailey drunk enough to pass out and then smother him by wrapping his face in Saran Wrap. She believed that if she suffocated him with the plastic wrap it would leave no marks and it would appear Bailey had died as a consequence of an overdose or heart attack. She sought the help of her eighteen-year-old son, Jacob, and his girlfriend, Jessica. Frei told Bailey that she and Jessica would engage in sex acts together while he watched if he would drink a shot of vodka for each sex act they performed. Bailey agreed and, on the morning of Saturday, July 18, told his work acquaintances about the ménage à trois that was to take place that night.

That night, Frei and Jessica followed their plan, serving Bailey shots of vodka until he passed out in the living room. Jessica summoned Jacob to the house, and Frei bound Bailey's wrists with plastic wrap. As his face was being wrapped, however, Bailey woke up and struggled to free himself. Frei, Jacob, and Jessica each grabbed objects nearby, including a rock and a candy dish, and struck Bailey approximately thirty times until he died. The three cleaned up the scene, and Jacob and Jessica left the house. Frei called 911 and reported a false story about the circumstances surrounding Bailey's death. She told the police that Bailey died during a drug deal gone bad—that while she was upstairs he had let two men into the house to purchase drugs and

that she heard them struggle and came down to find Bailey dead. When she later learned that her son had confessed his participation in the incident, she returned to the police station and admitted her own involvement.

Frei offered the trial testimony of Dr. Marilyn Hutchinson, who testified that Frei suffered from depression, posttraumatic stress syndrome (PTSD), battered women's syndrome (BWS),[2] and possibly an anxiety disorder. Dr. Hutchinson explained that she believed Frei had endured a tremendous amount of sexual and emotional abuse from Bailey, childhood sexual and physical abuse, and adult physical abuse from her former husband. She opined this extensive history of abuse distorted Frei's thoughts and feelings and impacted her ability to make rational decisions. Dr. Hutchinson further testified that at the time of the murder, Frei would have had the ability to distinguish between right and wrong, but that Frei would not have understood right and wrong the way people without these mental health issues understand them. In particular, Dr. Hutchinson opined that Frei would have understood it was legally wrong to kill Bailey but would have also believed that it was right to protect her children from his threat to kill them.

The State offered expert testimony from Dr. Michael Taylor, who concluded that Frei did not suffer from any psychiatric disorder and that she understood the nature and quality of her acts when she plotted to kill Bailey. He specifically rejected Dr. Hutchinson's posttraumatic stress syndrome disorder diagnosis, noting Frei had denied all of the normal

---

[2]In this case, Frei's expert testified that she believed Frei suffered from "battered women's syndrome." This condition is also sometimes referred to as "battered woman syndrome," "battered person syndrome," or "battered spouse syndrome." For clarity, we use the term utilized by the expert and the parties in this case.

symptoms of PTSD during his interview with her. The State also relied on Frei's own admissions to disprove her justification defense—specifically that she planned Bailey's death for a week-and-a-half to two weeks and that she tried to make it look like an accidental death rather than a murder. The State also introduced evidence that she made statements suggesting proceeds from life insurance on Bailey's life would allow her to pay off debts on the restaurant she owned with Bailey.

The jury found Frei guilty. On appeal, she raises four issues: that the district court erroneously (1) instructed the jury on the elements of a justification defense, (2) instructed the jury that the defendant bore the burden to prove an insanity defense, (3) instructed the jury on the definition of reasonable doubt, and (4) denied Frei's motion for mistrial after the prosecution violated a ruling in limine during opening statements.

## II. Scope of Review.

We review challenges to jury instructions for correction of errors at law. *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010); *see also* Iowa R. App. P. 6.907. " 'We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion.' " *Marin*, 788 N.W.2d at 836 (quoting *Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006)). "Error in giving or refusing to give a particular instruction warrants reversal unless the record shows the absence of prejudice." *Id.* " 'When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice.' " *Id.* (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)). When the alleged instructional error is of constitutional magnitude, the burden is on the

State to prove lack of prejudice beyond a reasonable doubt. *State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010). We review a trial court's denial of a motion for mistrial for an abuse of discretion. *State v. Greene*, 592 N.W.2d 24, 30 (Iowa 1999).

**III. Discussion.**

**A. Jury Instructions on Justification Defense.** Iowa Code section 704.3 (2011) prescribes the elements of a justification defense.

> A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force.

Iowa Code § 704.3.

"Reasonable force" is defined as

> that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat. Reasonable force, including deadly force, may be used even if an alternative course of action is available if the alternative entails a risk to life or safety, or the life or safety of a third party, or requires one to abandon or retreat from one's dwelling or place of business or employment.

*Id.* § 704.1.

When interpreting and applying these statutes, we have explained that "the test of justification is both subjective and objective. The actor must actually believe that he is in danger and that belief must be a reasonable one." *State v. Elam*, 328 N.W.2d 314, 317 (Iowa 1982). Frei takes issue with this characterization of the justification defense. She contends the "objective" element of the justification—requiring the defendant to act and perceive as a reasonable person—is incompatible with the requirement that the State must prove the defendant possessed

the level of culpability required to support a conviction for the charged crime. She asserts that if the defendant possesses the subjective belief that her actions are justified, then "the objective reasonableness of that belief should not matter." Accordingly, she contends the district court erred when it rejected her proposed instruction defining "reasonable force" as "only the amount of force a reasonable person *or a person with the Defendant's alleged degree of mental illness* would find necessary to use under the circumstances." Frei contends the district court further erred in denying her requested justification instruction, which would have permitted the jurors to acquit her if they found she subjectively believed her actions were justified without considering whether her perception of danger or belief regarding the availability of an alternative course of action was reasonable. The given justification instruction, by contrast, retained an objective reasonableness requirement.

Frei contends the decision of our court of appeals in *State v. Price* supports her contention that the standard should be subjective. *See State v. Price*, No. 07–1659, 2008 WL 5234351 (Iowa Ct. App. Dec. 17, 2008). In its discussion of the admissibility of BWS evidence in that case, the court noted:

> [W]e think the expert's testimony would have given the jury information that it needed to understand the significance and meaning of the victim's conduct and to understand the defendant's reaction to that conduct . . . . Furthermore, we agree with those jurisdictions that have concluded that while evidence of battered women's syndrome is not in and of itself a defense, "its function is to aid the jury in determining whether a defendant's fear and claim of self-defense are reasonable."

*Id.* at \*6 (citation omitted) (quoting *State v. Edwards*, 60 S.W.3d 602, 613 (Mo. Ct. App. 2001)).

While the decision in the unreported *Price* decision is not binding authority for this court, it appears to be the only decision of an appellate court in the state addressing the admissibility of expert testimony about BWS offered by a defendant in furtherance of her justification defense.[3] We note the conclusion reached by the court of appeals in *Price* that such evidence is relevant to both the defendant's subjective belief and the reasonableness of her belief is consistent with the results reached by several other courts across the country. *See, e.g., People v. Humphrey,* 921 P.2d 1, 9 (Cal. 1996); *Smith v. State,* 486 S.E.2d 819, 822 (Ga. 1997); *State v. Hennum,* 441 N.W.2d 793, 798 (Minn. 1989); *State v. Kelly,* 478 A.2d 364, 376–77 (N.J. 1984); *State v. Seeley,* 720 N.Y.S.2d 315, 321 (Sup. Ct. 2000); *State v. Koss,* 551 N.E.2d 970, 973–74 (Ohio 1990). The decisions of these courts have not eliminated the reasonableness requirement from a justification defense when a defendant relies on BWS. *But see Bechtel v. State,* 840 P.2d 1, 11 (Okla. Crim. App. 1992) (modifying jury instructions, in BWS cases, to eliminate requirement that defendant "reasonably" believe use of deadly force is necessary to avoid imminent danger). Instead, these cases have examined the appropriate level of contextualization for the reasonableness inquiry. *See Smith,* 486 S.E.2d at 823. As applied to a battered woman, an appropriately specific reasonableness inquiry might consider objective facts about the batterer, any history of violence, any failed attempts to escape abuse, and any other facts relevant under the

---

[3]We have twice addressed the admission of testimony regarding battered women's syndrome in criminal trials, but neither case involved a defendant's offer of BWS evidence. Instead, the evidence was used by the State against the defendant—to explain an abuse victim's recantation of an accusation, *State v. Griffin,* 564 N.W.2d 370, 374 (Iowa 1997), or to prove the defendant confined the victim against her will, *State v. Rodriquez,* 636 N.W.2d 234, 246 (Iowa 2001).

circumstances. Further, expert testimony can aid in cautioning jurors that the behavior of battered women should not be lightly dismissed as inherently unreasonable. These cases do not, however, establish that an appropriate reasonableness inquiry extends only as far as a specific defendant's actual, subjective beliefs regarding the surrounding circumstances. Accordingly, Frei's reliance on *Price*, and by extension the authorities from other jurisdictions, does not support her argument for a purely subjective test for justification.

The State argues that the jury instructions given by the court in this case accurately express the legal elements of a justification defense as provided by sections 704.1 and 704.3 and interpreted by our prior caselaw. We agree. Frei's proposal for an entirely subjective test of justification is incompatible with the clear mandate of sections 704.1 and 704.3 requiring the actions and perceptions of the defendant be tested against a reasonableness standard. The district court did not err in instructing the jury as it did.

**B. Reasonable Doubt Instruction.** Frei requested a jury instruction on reasonable doubt that read as follows:

> The burden is on the State to prove Denise Frei guilty beyond a reasonable doubt.
>
> A "reasonable doubt" is such a doubt as fairly and naturally arises in our mind and by reason of which you cannot say that you have a full and abiding conviction of the guilt of the defendant; and if, after considering all of the circumstances as disclosed by the evidence, you find your mind wavering or vacillating, then you have a reasonable doubt, and the defendant is entitled to the benefit of such doubt and you must acquit her. A reasonable doubt may arise from the evidence in the case or it may arise from a lack or failure of evidence produced by the State, and it must be such a doubt as would cause a reasonable, prudent and considerate man to pause and hesitate before acting in the graver and more important affairs of life. But you should not ignore credible evidence to hunt for doubt, and you should not entertain

such doubt as is purely imaginary or fanciful or based on groundless conjecture. If, after a careful and impartial consideration of all evidence in the case, you have a full and abiding conviction of the guilt of the defendant, then you are satisfied beyond a reasonable doubt, otherwise you are not satisfied beyond a reasonable doubt.[4]

The district court declined to give the instruction requested by Frei, electing instead to give the following instruction on the subject:

The burden is on the State to prove Denise Leone Frei guilty beyond a reasonable doubt.

A reasonable doubt is one that fairly and naturally arises from the evidence or lack of evidence produced by the State.

If, after a full and fair consideration of all the evidence, you are firmly convinced of the defendant's guilt, then you have no reasonable doubt and you should find the defendant guilty.

But if, after a full and fair consideration of all the evidence or lack of evidence produced by the State, you are not firmly convinced of the defendant's guilt, then you have a reasonable doubt and you should find the defendant not guilty.[5]

Frei contends the instruction given by the district court violated her due process rights.

---

[4]This proposed instruction was derived from language found in one of the "Uniform Jury Instructions" drafted by a special committee of the Iowa State Bar Association (ISBA) and published by that association prior to 2004.

[5]This instruction given by the district court was derived from language found in the version of the ISBA's uniform instruction on reasonable doubt extant from 2004 to 2009. By the time of the trial of this case in August 2011, the ISBA's uniform instruction on reasonable doubt had been revised to include an additional paragraph which provides:

A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

Iowa Crim. Jury Instruction 100.10 (March 2009).

We begin our analysis by noting the clearly established proposition that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368, 375 (1970). " '[T]aken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' " *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583, 590 (1994) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S. Ct. 127, 138, 99 L. Ed. 150, 167 (1954)). The constitutional question presented here "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Id.* at 6, 114 S. Ct. at 1243, 127 L. Ed. 2d at 591.

Courts have struggled, however, in settling upon a serviceable definition of the "reasonable doubt" standard. The choice of words accurately communicating the nature and extent of certitude jurors must have a defendant's guilt in order to vote for a conviction is not an easy project. The Due Process Clause provides no definitional guidance as it requires no "particular form of words be used in advising the jury of the government's burden of proof." *Id.* at 5, 114 S. Ct. at 1242–43, 127 L. Ed. 2d at 590 (noting "[a]lthough this standard is an ancient and honored aspect of our criminal justice system, it defies easy explication."). Yet, Supreme Court jurisprudence teaches that a minimum definitional threshold for the standard does exist. For example, a jury instruction characterizing reasonable doubt as "such doubt as would give rise to grave uncertainty" and "an actual substantial doubt" amounting to a "moral certainty" set the bar for the State's burden of proof too low and fell below the due process threshold. *Cage v.*

*Louisiana*, 498 U.S. 39, 41, 111 S. Ct. 328, 329–30, 112 L. Ed. 2d 339, 342 (1990) (per curiam, *overruled in part on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4, 112 S. Ct. 475, 482 n.4, 116 L. Ed. 2d 385, 399 n.4 (1991)).

Other formulations of the reasonable doubt standard have survived due process scrutiny. In *Victor*, the Supreme Court found no due process violation resulted from jury instructions in two consolidated cases. In one of these cases, the California state trial court's instructions defined reasonable doubt as follows:

> It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

*Victor*, 511 U.S. at 7, 114 S. Ct. at 1244, 127 L. Ed. 2d at 591–92 (citation omitted). In the other consolidated case, a Nebraska state trial court defined reasonable doubt as follows:

> "Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, to a moral certainty, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the strong probabilities of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an actual and substantial doubt reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

*Id.* at 18, 114 S. Ct. at 1249, 127 L. Ed. 2d at 598 (citation omitted). The Supreme Court concluded both of these reasonable doubt formulations passed due process muster. *Id.* at 22–23, 114 S. Ct. at 1252, 127 L. Ed. 2d at 601.

Frei contends the reasonable doubt instruction given by the district court in this case fell short of the applicable due process standard because it failed to " 'impress[] upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused.' " *Id.* at 15, 114 S. Ct. at 1247, 127 L. Ed. 2d at 596 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2786, 61 L. Ed. 2d 560, 571 (1979)). In particular, she posits that the "firmly convinced" formulation of reasonable doubt instructed upon in this case provided no real guidance to the jurors as to the nature or quality of doubt that would require an acquittal, and thus allowed them to convict her with a lesser quantum of certainty than is required by the Federal Constitution.[6]

We approved a very similar formulation of the reasonable doubt standard in *State v. McFarland*, 287 N.W.2d 162, 163 (Iowa 1980). The relevant instructions in *McFarland* authorized the jury to convict the defendant only if they were "firmly and abidingly convinced" of the defendant's guilt. *Id.* We concluded the instructions sufficiently "set out an objective standard for measuring the jurors' doubts." *Id.*

---

[6]Frei also suggests "this Court can interpret the due process clause of the Iowa Constitution to require the use of Ms. Frei's proposed instruction, even if the U.S. Supreme Court's interpretation of the federal Constitution would not require it." She makes no argument however, suggesting a different interpretation is mandated under the corollary due process clause in the Iowa Constitution. "As a result, prudential concerns ordinarily mean that where an argument that the Iowa Constitution should be construed differently than the United States Constitution is not presented, we assume for purposes of the case that the provisions should be interpreted in an identical fashion." *State v. Feregrino*, 756 N.W.2d 700, 703–04 n.1 (Iowa 2008).

Since *Victor* was decided in 1994, the "firmly convinced" standard has achieved extensive recognition and is likely the formulation of the reasonable doubt standard most widely approved by American jurists, academics, and litigants. Lawrence M. Solan, *Refocusing the Burden of Proof in Criminal Cases: Some Doubt About Reasonable Doubt*, 78 Tex. L. Rev. 105, 145 (1999) ("The superiority of the firmly convinced instruction comes not from its semantic fidelity to the reasonable doubt standard but from its greater success in promoting important values."); *see also* Jon O. Newman, *Beyond "Reasonable Doubt,"* 68 N.Y.U. L. Rev. 979, 990–91 (1993); Irwin A. Horowitz, *Reasonable Doubt Instructions*, 3 Psychol. Pub. Pol'y & L. 285, 297–98 (1997) (discussing the superiority of the firmly convinced standard as evidenced by statistical analysis); *A Handbook of Criminal Terms* 574 (Bryan A. Garner ed., 2000); *Black's Law Dictionary* 1380 (9th ed. 2009) (defining reasonable doubt as "the doubt that prevents one from being firmly convinced of a defendant's guilt, or the belief that there is a real possibility that a defendant is not guilty.").

In her concurring opinion in *Victor*, Justice Ginsburg stoutly endorsed a reasonable doubt instruction proposed by the Federal Judicial Center, characterizing it as "clear, straightforward, and accurate." 511 U.S. at 27, 114 S. Ct. at 1253, 127 L. Ed. 2d at 603 (Ginsburg, J., concurring in part and concurring in judgment) (quoting Federal Judicial Center (FJC), Pattern Criminal Jury Instructions, at 17-18 (instruction 21)). That instruction embraced firmly convinced language comparable to that used in the instruction challenged in this case: "Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. . . . If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the

crime charged, you must find him guilty." *Id.* Six federal courts of appeals have approved the firmly convinced standard, finding that it accurately expresses the degree of certainty required to find a defendant guilty beyond a reasonable doubt. *See, e.g.*, *United States v. Rodriguez*, 162 F.3d 135, 146 (1st Cir. 1998); *United States v. Conway*, 73 F.3d 975, 980 (10th Cir. 1995); *United States v. Reese*, 33 F.3d 166, 172 (2d Cir. 1994); *United States v. Williams*, 20 F.3d 125, 131–32 (5th Cir. 1994); *United States v. Taylor*, 997 F.2d 1551, 1555–56 (D.C. Cir. 1993); *United States v. Velasquez*, 980 F.2d 1275, 1278 (9th Cir. 1992).

Numerous state courts have also adopted the FJC pattern instruction and expressly approved its firmly convinced language. *State v. Portillo*, 898 P.2d 970, 974 (Ariz. 1995) (adopting the FJC firmly convinced standard in all criminal cases); *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind. 1996) (approving the FJC firmly convinced standard and recommending its use in Indiana courts, "preferably with no supplementation or embellishment"); *State v. Reyes*, 116 P.3d 305, 314 (Utah 2005) (requiring that Utah trial courts use the FJC instruction); *cf. Joyner-Pitts v. State*, 647 A.2d 116, 122–23 (Md. Ct. Spec. App. 1994) (quoting the FJC "firmly convinced" instruction with approval).

We find no reversible error in the "firmly convinced" formulation used by the district court in this case. "Firmly" means "steadfastly," "resolutely," "soundly," "solidly," and "strongly." *Webster's Third International Dictionary* 856 (unabr. ed. 2002). Likewise, "firm" is defined as "immovable," "fixed," "settled," "not easily moved, shaken, excited, or disturbed." *Id.* The word "firmly" is not arcane or obscure, but rather is a plain, well-understood word commonly used in modern speech. We believe it adequately expressed—within the due process parameters articulated in *Victor*—the extent of certitude the jury must possess to

convict a defendant of a crime in this state.[7]  Accordingly, we conclude the district court did not err when it instructed the jury on reasonable doubt.

**C.  Burden of Proof on Insanity Defense.**  Frei proposed a jury instruction allocating to the State the burden of proving Frei was not insane at the time of Bailey's death.  Arguing in favor of the proposed jury instruction and in opposition to the instruction actually given by the district court in this case, Frei's counsel made the following record:

> I know the court's concerned about the fact that we placed insanity as an element the State has to disprove, and I think due process has to prove that notwithstanding the legislature to turn that upside down with the burden on the Defendant.  But if the court believes that the legislature has that power, but we would propose that that be removed from the marshaling instructions that that would be the proper instruction that should be given.

Frei argues on appeal that the district court's allocation to her of the burden of proving insanity violated her right to equal protection of the law.  However, the State contends error was not preserved because Frei raised no equal protection argument in the district court.  Frei responds that she raised "constitutional" concerns to the court and raised a specific equal protection challenge in her motion for a new trial.

As we have noted, the record made by Frei's counsel on the jury instructions advanced only a due process argument, not the equal protection argument she now asserts.  Issues raised for the first time in posttrial motions are not sufficient to preserve error.  *State v. Stone*, 764

---

[7]Our determination that the district court did not err in using the "firmly convinced" formulation to define the reasonable doubt standard in this case should not be viewed as a rejection of any other formulation expressing in equivalent terms the state's burden of proof.

N.W.2d 545, 550 (Iowa 2009). Accordingly, this issue has not been preserved for our review.

**D. Denial of Motion for Mistrial.** When Frei first spoke with police, she told them she believed Bailey had died during a drug deal. She told them two men had come to the house to conduct a drug transaction, that she heard Bailey use racial slurs referring to one of the men, and that she heard one of the men speak with an accent she did not recognize.

Frei moved in limine to exclude any reference at trial to the fact that she used racial slurs in reporting the story to the police or to the fact that she had claimed the fictitious drug dealers belonged to any particular racial or ethnic group. The court granted the motion, ruling that the State should not reveal to the jury any racial or ethnic slurs spoken by Frei, but that "the State may refer to the Defendant attempting to blame other persons without reference to ethnic or racial characteristics."

During opening statements, the prosecution twice referred to the defendant blaming "Hispanic" drug dealers for Bailey's death. Specifically the prosecutor told the jurors that Frei "not only . . . said it was a drug deal gone bad, she seemed to blame it on the drug dealers, at least one sounded like he was Hispanic." The prosecutor's opening statement also asserted that after Frei's original plan failed and Bailey was beaten to death, "then the plan became let's blame Hispanic drug dealers for [Bailey's] death." Frei moved for a mistrial.

The district court inquired of the prosecutor during the ensuing colloquy on the motion for mistrial whether it was really worth it to him to try to correct the error and run the risk of having any guilty verdict overturned on appeal. After hearing the arguments of counsel, the court

concluded the prosecutor's statements had violated the order in limine but denied the motion "somewhat reluctantly." The parties discussed whether a curative instruction should be given, but the district court declined to give one. When the trial resumed, the prosecutor made the following statement to the jury:

> During opening statement there was a reference made the Defendant blamed others for a drug deal, and Hispanics. It should have just been Defendant blamed others. I was incorrect in Hispanics. It was Defendant blamed others.

Frei contends the district court abused its discretion in denying her motion for mistrial. As it is in the best position to appraise the effect of any alleged misconduct, we allow the district court broad discretion in deciding whether to grant a mistrial. *Fry v. Blauvelt*, 818 N.W.2d 123, 132 (Iowa 2012). To establish reversible error on this issue, Frei must show the violation of the limine order resulted in prejudice that deprived her of a fair trial. *State v. Greene*, 592 N.W.2d 24, 32 (Iowa 1999). "The party claiming prejudice bears the burden of establishing it." *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989).

Frei contends opening statements strongly influence jurors' impressions of the case even before they hear evidence. Noting that her justification defense depended on the jury's perception of her credibility, Frei posits that the prosecutor's disclosure during his opening statement of Frei's false initial report of the incident blaming Hispanics for the murder was especially prejudicial. Upon our review of the record, we conclude the prosecution's remarks and subsequent correction of them did not produce such prejudice as would deny Frei a fair trial. We acknowledge the importance of opening statements in the trial process and do not diminish the importance of faithful observance of limine orders by prosecutors. However, the prosecutor's attribution to Frei of

statements blaming Hispanics for the murder and his later attempt to "correct" his error did not include racial slurs or other inflammatory language. There were no further violations of the court's limine order during the remainder of the trial. On this record, we conclude the prosecutor's statements did not deprive Frei of a fair trial. Accordingly, the district court did not abuse its discretion in denying Frei's motion for mistrial and we therefore affirm on this issue.

**IV. Conclusion.**

For the reasons stated above, we affirm Frei's conviction.

**AFFIRMED.**