# IN THE SUPREME COURT OF IOWA

No. 22–1440

Submitted November 15, 2023—Filed February 2, 2024

**STATE OF IOWA,**

> Appellee,

vs.

**JEROME EMANUEL BAILEY SR.,**

> Appellant.

---

Appeal from the Iowa District Court for Winnebago County, Gregg R. Rosenbladt, Judge.

The State appeals the district court's dismissal of an extortion charge on the defendant's motion to dismiss. **REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellant.

Alexander Smith (argued) of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellee.

**McDERMOTT, Justice.**

Jerome Bailey's former property manager had a no-trespass notice served on Bailey at Bailey's home. Months later, Bailey learned that the person who delivered the notice was a registered sex offender. Bailey sent an email to the property manager claiming that she broke the law by sending a registered sex offender to Bailey's house because his house served as a childcare facility. In the email, Bailey offered not to pursue criminal charges, not to contact her current employer, and not to pursue a civil lawsuit and civil rights complaint against her—if she paid him $10,000. The property manager provided the email to the police. The State thereafter charged Bailey with extortion.

Bailey moved to dismiss the charge. The district court granted his motion, concluding that Bailey's email fell within a defense in Iowa's extortion statute for threats made with the reasonable belief that the person had a right to make the threat. The State appealed. The resolution of this appeal requires us to consider for the first time how the statutory defense in the extortion statute applies when a defendant files a motion to dismiss the charge.

I.

Bailey previously lived in a rental property in Forest City managed by Theresa Coombs. During that time, Coombs had hired Bailey to perform odd jobs at properties she managed until, at one point, Bailey allegedly poured grease down the sink in his unit, causing plumbing problems. When Coombs requested that Bailey pay for the repairs, Bailey responded by filing a civil rights complaint against Coombs for racial discrimination. Coombs and her employer settled the suit by giving Bailey's family two months' free rent and returning their security deposit in exchange for dismissal of the complaint. When Coombs stopped employing Bailey, Bailey threatened to file another civil rights complaint but

ultimately never did.

After these disputes, Coombs refused to renew Bailey's lease. She asked Forest City Police Department officers to stand by at Bailey's rental unit while she completed the move-out inspection with Bailey's wife. As Coombs and Bailey's wife walked through the apartment, Bailey stood outside yelling at the police officers. One of the officers informed Coombs that she could notify Bailey by letter that he could be charged with trespassing if he appeared on any of her properties in the future.

On April 1, 2020, Coombs delivered the no-trespassing letter with the help of another person who worked odd jobs for her named Zachary Vulich. Coombs and Vulich drove around Forest City until they spotted Bailey's vehicles parked at his new residence. Vulich went to Bailey's front door and hand-delivered the letter to Bailey. He then returned to the car and drove away with Coombs. Bailey soon thereafter contacted law enforcement, claiming that Vulich had falsely identified himself as a law enforcement officer. The county attorney declined to charge Vulich or Coombs.

Several months later, on August 9, Bailey sent an email to Coombs that stated as follows:

> I first want to thank you for doing the right thing in compensating us for our recent complaints with Iowa Civil Rights. . . . It is because you did the right thing in our last complaint, that I'm giving you the opportunity to do what is right in this current complaint before asking Hancock County Prosecutors to bring charges against you. Also a copy of your criminal behavior will also be sent to your employer at First Choice Realty, due to your conduct being a safety issue to the public. Also a complaint with Iowa Civil Rights & other agencies will be included & asked to assist in charges against both you & your husband & your LLC, as you share marital assets, if you fail to agree to these non negotiable terms. . . . I was told that you were inside the vehicle with Z. Vulich when he showed up at our residence. Attachment evidence will show that Mr. Zachary Scott Vulich is a Tier 3 Sex Offender! . . . Attachment evidence will show that Iowa Code in regards to Sex Offenders requires them not to be within

> 200 to 300 feet of any Child Care Facilities! Attachment evidence will show that [my wife] is Licensed through the State of Iowa to provide ChildCare at our residence . . . effective 05/26/20, roughly 5 days before both you & Mr. Vulich dangerous visit to our home & facility. According to Iowa Law, Mr. Vulich is in violation of the terms of his Sex Registry Rules & Regs! Since you are the reason Mr. Vulich was at our home & facility, you can also be charged! My offer is $10,000 non negotiable! This settlement will cover not asking for charges to be brought against you by Hancock County Prosecutors! This settlement will also cover me not involving your employer at First Choice! This settlement will also cover no complaints to Civil Rights or any other agencies! This settlement covers you, your spouse, & LLC, and ends all complaints both civil & criminal! You have only till 5pm tomorrow 08/10/20 to respond. No response will be an indication of a No & [I] will proceed!

Bailey's email incorrectly stated the date that Vulich served the letter. Vulich delivered it on April 1, not within "roughly 5 days" of May 26.

Bailey sent Coombs two more emails that night. Coombs responded the next morning stating that she considered his claims to be "without merit" and "attempted extortion," and said that she'd provided his email to the police. Bailey responded with another email: "Thanks for your response. I expect you to act as a karen in regards to your calling of police! . . . There will be no further communication as [I] got the response [I] needed."

He then emailed the chief of police and the county attorney, writing:

> I am requesting charges against Mr. Vulich for violation of his Sex Registry requirements, & Mrs. Coombs for not vetting a very dangerous child predator before having him fake law enforcement & endanger our home by showing at our residence, especially after she had already delivered the message earlier that day via email as you know! Mrs. Coombs response to my settlement offer was not a response from someone who did not know who they were dealing with, she obviously knew he was a danger & did not care! . . . Please let me know what new excuse you come up with if you refuse again to charge this dangerous individual & his accomplice. My family does plan to fully cooperate with this matter! Please let me know if there is any additional information needed to move forward, or what my

family needs to do for you to do your job! Thanks.

The State declined to charge either Vulich or Coombs because Bailey's residence was never a registered childcare development home or facility under Iowa Code § 237A.1(5) (2020). The department of human services confirmed that the house instead was classified as "[n]on-registered with a child care assistance agreement." Bailey's house thus did not fall within an exclusion zone under the sex offender statute potentially giving rise to a violation—even if the childcare assistance agreement had been in effect when Bailey was served the letter in April. *See* Iowa Code § 692A.113(1)(*d*)–(*e*).

The State charged Bailey with extortion in violation of Iowa Code § 711.4, a class "D" felony. Bailey moved to dismiss the charge under Iowa Rule of Criminal Procedure 2.11(6)(*a*) (2022). He argued that he did not commit extortion because he had not threatened to *falsely* accuse Coombs of a public offense but instead reported only "valid allegations." He analogized the situation to a store catching a shoplifter or vandal and agreeing not to press charges in exchange for payment of damages.

The State resisted. It argued that the crime Bailey alleged Coombs to have committed was, in fact, not a crime at all. It further argued that Bailey's proposed interpretation of the statute added a requirement that the threat to report the crime contain *false* information. And the State argued that Bailey's motion ignored alternatives to proving extortion set forth in the statute, including making a threat "to expose any person to hatred, contempt, or ridicule," and making a threat "to harm [any person's] credit or business or professional reputation." Iowa Code § 711.4(1)(*c*)–(*d*).

At the hearing on the motion to dismiss, Bailey described his prior dealings with Coombs, including the earlier civil rights complaint settlement, and argued

that the $10,000 demand was similarly an "attempt to settle." The State responded by highlighting the arguments in its resistance brief and the alternative means of committing extortion under the statute.

The district court granted Bailey's motion to dismiss. It focused on a statutory defense in Iowa Code § 711.4(3) that provides:

> It is a defense to a charge of extortion that the person making a threat other than a threat to commit a public offense, reasonably believed that the person had a right to make such threats in order to recover property, or to receive compensation for property or services, or to recover a debt to which the person has a good faith claim.

Responding to the State's argument that no actual crime supported Bailey's threat against Coombs, the district court stated that there was a "sincere question" about "whether a layperson would be able to differentiate between a childcare facility and a childcare home without researching the Iowa Code." It concluded that Bailey had a reasonable belief that his communication with Coombs was legitimate, that he did not threaten to commit a public offense, and thus that Bailey had established the statutory defense under § 711.4(3).

The State filed a motion to reconsider, arguing that the only question before the court at the motion to dismiss stage "is whether the facts the State has alleged in the trial information and attached minutes charge a crime as a matter of law." (Quoting *State v. Gonzalez*, 718 N.W.2d 304, 309 (Iowa 2006).) The State highlighted facts that, in its view, created jury questions about whether Bailey reasonably believed he had "a good faith claim" under the statute to a $10,000 payment. *See* Iowa Code § 711.4(3). Bailey resisted, characterizing his email as expressing a good-faith belief that he could seek money damages from Coombs

under various tort theories.

The court denied the motion to reconsider. The State appealed.

II.

The State argues that the statutory defense in § 711.4(3) does not apply here because Bailey's alleged belief that he could demand $10,000 from Coombs is objectively *un*reasonable. Alternatively, even if Bailey's threats fall within the statutory defense, the State argues that disputed questions of fact exist—about whether Bailey "reasonably believed" he had a right to make the threats and whether he had "a good faith claim" that he was entitled to $10,000—that prevent dismissal at the motion to dismiss stage. *See id.* In response, Bailey argues that he was making a legitimate settlement offer to resolve a disputed claim (a course of action generally favored by courts) and that the statutory defense is an element of extortion that the State cannot meet its burden to disprove in this case.

As an initial matter, it's useful to iron out the evidentiary burdens associated with the statutory defense in § 711.4(3). We've observed that whether the State must affirmatively negate a statutory exception—a provision exempting certain conduct from what otherwise would create criminal liability—can present "a baffling problem." *State v. Wilt*, 333 N.W.2d 457, 461 (Iowa 1983). The state bears the burden to negate a statutory exception if it's an element of the crime. *State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982). The defendant bears the burden to produce evidence supporting an affirmative defense. *Id.* The "elements of crime" are those "constituent parts of a crime . . . that the prosecution must prove to sustain a conviction." *Elements of Crime*, *Black's Law Dictionary* 657 (11th ed. 2019). An "affirmative defense," conversely, is "[a] defendant's assertion of facts and arguments that, if true, will defeat the . . . prosecution's claim, even

if all the allegations in the complaint are true." *Defense, id.* at 528.

In *State v. Wilt*, the state appealed the district court's ruling that statutory exceptions found in Iowa's criminal gambling statute were elements of the offense. 333 N.W.2d at 459. The district court held that the state bore the burden of proof to show that the statutory exceptions (for instance, ones permitting gambling for bona fide contests or social games at nonpublic places) did not apply without any initial evidentiary burden imposed on the defendants invoking the exceptions. *Id.* at 461–62. We reversed, holding that the exceptions were affirmative defenses and not elements of the crime, and thus the burden of *production* for the statutory exceptions resided with the defendant while the burden of *persuasion* remained with the state. *Id.* We distilled the rule this way: "There is no burden on the State to negate an affirmative defense unless the defendant meets his initial burden by producing sufficient evidence that the defense applies." *Delay*, 320 N.W.2d at 834.

How do we know whether § 711.4(3) constitutes an element of the offense or an affirmative defense? We have stated that a statutory provision is an affirmative defense and not an element of the offense where the provision "creates an additional legal point for the State *to counter.*" *Wilt*, 333 N.W.2d at 462 (emphasis added). The state, as part of its burden in a criminal case, does not prove an affirmative defense but rather *negates* it once the defendant meets his initial burden of production. *Delay*, 320 N.W.2d at 834.

In analyzing statutory elements and defenses, we generally look to the text of the statute to understand the interplay between different provisions. "The legislature is its own lexicographer in defining crimes." *State v. Lee*, 315 N.W.2d 60,

62 (Iowa 1982). Extortion is defined in Iowa Code § 711.4(1). It states:

> A person commits extortion if the person does any of the following with the purpose of obtaining for oneself or another anything of value, tangible or intangible, including labor or services:
>
> > *a.* Threatens to inflict physical injury on some person, or to commit any public offense.
>
> > *b.* Threatens to accuse another of a public offense.
>
> > *c.* Threatens to expose any person to hatred, contempt, or ridicule.
>
> > *d.* Threatens to harm the credit or business or professional reputation of any person.
>
> > *e.* Threatens to take or withhold action as a public officer or employee, or to cause some public official or employee to take or withhold action.
>
> > *f.* Threatens to testify or provide information or to withhold testimony or information with respect to another's legal claim or defense.
>
> > *g.* Threatens to wrongfully injure the property of another.

*Id.* These express the *elements* of the crime of extortion.

Section 711.4(3), on the other hand, pertains to "a defense to a charge of extortion." *Id.* § 711.4(3). The defense is based on whether "the person . . . reasonably believed that the person had a right to make [the] threats" at issue "to recover a debt to which the person has a good faith claim." *Id.* The defense is found in its own subsection, separate from the elements of the crime listed two subsections earlier. *Compare id.* § 711.4(1), *with id.* § 711.4(3). That it is a defense, and not an element of the crime, appears explicitly in the subsection's opening words: "It is a *defense* to a charge of extortion . . ." *Id.* § 711.4(3) (emphasis added). What's more, it constitutes not a component of the crime that the state must prove but "an additional legal point for the State" ultimately to *disprove* after the defendant meets its initial evidentiary burden. *Wilt,* 333 N.W.2d

at 462. We thus conclude that § 711.4(3) is an affirmative defense. And because § 711.4(3) is an affirmative defense, the State bears no burden to negate it until Bailey satisfies an initial burden to produce sufficient evidence to go forward with it. *See Delay*, 320 N.W.2d at 834.

Which brings us to Bailey's motion to dismiss. Dismissal is required if it appears that the trial information and minutes "do not constitute the offense charged" or show "that the defendant did not commit that offense." Iowa R. Crim. P. 2.11(6)(*a*) (now revised and renumbered at Iowa Rule of Criminal Procedure 2.11(8)(*a*) (2023)). Bailey argues that the minutes of testimony do not carry the State's burden of disproving the statutory defense and thus require dismissal of the charge. A statutory defense *may* be the basis of a successful motion to dismiss, but generally only where the applicability of the defense can be decided as a matter of law. *See State v. Jones*, 524 N.W.2d 172, 175 (Iowa 1994) (per curiam). In *State v. Jones*, for example, we granted a dismissal where the only question presented was whether the defendant could establish a statutory defense to a charge of unlawful carrying of a firearm because his zippered gun case could be "fastened" consistent with the carrying requirements in § 724.4(4)(*f*). *Id.* at 175. The resolution of the motion to dismiss turned on a purely legal question: whether a gun enclosed in a zippered case is in a "closed and fastened" container under the statute. *Id.*

But Bailey's motion to dismiss requires the resolution not of a purely legal question but rather questions about disputed facts. The district court recited undisputed facts that, in its view, demonstrated that Bailey had a reasonable belief in the legitimacy of his threats, including Bailey's prior settlement with Coombs, that Vulich is a registered sex offender, that Coombs brought Vulich to Bailey's residence, and that Bailey's residence was being used for childcare.

But these undisputed facts alone do not establish an affirmative defense under § 711.4(3). Key issues presented by § 711.4(3) center on whether Bailey reasonably believed he had a right to make the threats and demand that specific monetary amount. Although we have not had occasion to construe the meaning of "reasonably believes" in § 711.4(3), we have interpreted the same term in our justification statute. *See State v. Frei*, 831 N.W.2d 70, 74 (Iowa 2013) (describing the affirmative defense of self-defense under Iowa Code § 704.3), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). We've construed the term "reasonably believes" to include both an *objective* and *subjective* component, such that "[t]he actor must actually believe that he is in danger *and* that belief must be a reasonable one." *Id.* (emphasis added) (quoting *State v. Elam*, 328 N.W.2d 314, 317 (Iowa 1982)). The same dual application of the term fits under § 711.4(3).

Bailey did not establish, as a matter of law, that he both *objectively* and *subjectively* believed he had a right to threaten Coombs with criminal prosecution and public ridicule unless she paid him $10,000. Among other unresolved factual issues, Bailey's own communications suggest that Bailey knew that his residence was neither a childcare facility nor a childcare home until May 26—almost two months *after* Vulich served the no-trespass notice on April 1—yet Bailey's defense relies on a subjective belief that Vulich was breaking the law when he served the letter. Further, whether Bailey had "a good faith claim" to recover a "debt" of $10,000—an arguably extraordinary sum—for the misconduct he alleges likewise resists clear-cut resolution on the motion-to-dismiss record.

The State was not required to preemptively rebut Bailey's affirmative defense in the trial information or minutes of testimony. At the motion to dismiss stage, "the only relevant inquiry by the court is whether the facts the State has alleged in the trial information and attached minutes charge a crime as a matter

of law." *Gonzalez*, 718 N.W.2d at 309. We accept the facts alleged by the State in the trial information and minutes as true, as we must, on a motion to dismiss. *See State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008). "A motion that merely challenges the sufficiency of the evidence supporting [a trial information] is not a ground for setting [it] aside . . . ." *State v. Doss*, 355 N.W.2d 874, 880 (Iowa 1984).

The trial information sets out facts which, if accepted as true, support a reasonable conclusion from which a jury could find beyond a reasonable doubt that Bailey committed extortion. The State invites us to decide as a matter of law that Bailey is *not* entitled to an instruction on the § 711.4(3) defense. We decline the State's invitation. Whether Bailey is entitled to such an instruction is left to the district court to decide in the ordinary course after it hears the evidence. If the district court determines that "substantial evidence" in the record supports the defense, then it has a duty to give the requested instruction on the defense. *State v. Babers*, 514 N.W.2d 79, 83 (Iowa 1994). Bailey will have the opportunity to put forth evidence of his affirmative defense in this case, but he failed to establish that the State's extortion charge fails as a matter of law at this stage in the proceedings. The district court's order granting the motion to dismiss was thus in error. We reverse the district court's order and remand for further proceedings.

**REVERSED AND REMANDED.**