# IN THE COURT OF APPEALS OF IOWA

No. 23-0985
Filed June 5, 2024

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**JASON AARON GORDON,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark R. Lawson, Judge.

A defendant appeals his conviction for assault causing serious injury. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy and Michelle E. Rabe (until withdraw), Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

"Bad choices son bad choices," Jackson Vance sent by text message to Jason Gordon before he reported Gordon's actions to law enforcement. Gordon now appeals his subsequent conviction for assault causing serious injury, challenging the sufficiency of the evidence supporting that conviction and the district court's denial of his motion for a mistrial. We affirm.

**I. Background Facts and Prior Proceedings.**

Gordon and Vance were involved in an altercation. The genesis of the altercation sprung from Gordon's reaction to Vance's treatment of Molly, Vance's daughter. At this time, Gordon and Molly were friends and previously had dated. Following the altercation, Vance went to the emergency room, but he left because of the long wait. He did the same at the Le Claire Police Department. Vance then sent Gordon two pictures of his face that showed blood, scratches, and bruising around his left eye. He requested that Gordon come to his house within an hour of the text messages being sent, stating he would otherwise call the police; Gordon did not respond. Vance went to the emergency room a second time early in the afternoon the next day but left after giving his information to a triage nurse. After leaving the emergency room, he went to the police department, but he left without participating in an interview. In the evening, Vance again made it to the emergency room, and this time received treatment for his injuries.

Vance went back to the police department the following day and agreed to an interview with Le Claire Police Officer Tony Themas. While Officer Themas was interviewing Vance, he noticed that Vance's left eye was swollen, "was extremely black, and he also had an abrasion on the top of his head." After leaving,

Vance emailed Officer Themas photographs of these injuries as well as his medical records and the text message exchange between himself and Gordon. Officer Themas attempted to contact Gordon for over four months before Gordon agreed to come to the Le Claire police station. Following an interview with Officer Themas, the State charged Gordon with assault causing serious injury, a class "D" felony, in violation of Iowa Code section 708.2(4) (2021). It also alleged an habitual offender enhancement pursuant to Iowa Code sections 902.8 and 902.9(1)(c).

Prior to trial, Gordon filed a notice of defense of self-defense. Gordon also filed two motions in limine. In the second motion, he stated that Vance "will discuss his health progress since the alleged event . . . . Any testimony from . . . Vance about his health condition or the treatment of it is hearsay. The witness would only be telling his version of what a medical professional told him, which is inadmissible hearsay . . . ." The court reserved ruling on the motion, instructing the State and Gordon,

> If you believe that type of testimony is being elicited, you need to object on hearsay grounds. But I would agree with you, that would be hearsay unless there's an objection.
> Generally, otherwise, I believe . . . Vance can testify to his symptoms and his own personal knowledge of those symptoms.

At trial, the State offered and the court admitted the photographs of Vance's injuries. The emergency room nurse practitioner that treated Vance the day after the altercation testified that Vance had "pain both in his left facial region as well as generalized left-sided headache problems that he was complaining about. He was also complaining about some thoracic pain and rib pain." The nurse practitioner added that he "was concerned that [Vance] had not only damage to his eye" but also "bleeding on the inner aspect of his left eye." In addition, the nurse practitioner

identified "bruising and bleeding to the left periorbital or around the eye itself" and that Vance "had some limited range of motion in his neck." A CT scan revealed "bleeding into the brain tissue itself in the left temporal region" that was "consistent with blunt force trauma."

Although the injuries were undisputed, Gordon and Vance told different stories about their cause. Officer Themas testified that Gordon told him that he and Vance "had gotten into an argument" but "there was no physical altercation between the two, that it was just a verbal argument." Molly testified that she told Gordon that she had fought with Vance about "financial as well as family matters" and that Gordon knew that she was upset with Vance, plus that Gordon seemed upset about her fight with her father.

Vance testified next. He stated that he and Molly had "had a family discussion." Vance walked away up the street and was on the phone with his wife when he saw Gordon walking "up the middle of the street flailing his hands and— and yelling things." After Gordon asked why he was so mean to Molly, Vance said Gordon "hit him directly in the forehead," explaining further:

> My head spun around, my glasses went several feet, maybe six, seven feet behind me. I turned back around. [Gordon] hit me in the left eye twice on the top of the head. And I kind of—I was still on the phone, still holding the phone to my head. And I just kind of didn't fall down. I just kind of melted down to the ground still on the phone.

Then, according to Vance, Gordon kicked him between the shoulder blades and ran away. Vance insisted that he did not do anything of a threatening nature before Gordon hit him in the forehead. On cross-examination, Vance denied taking steps toward Gordon and denied pushing his shoulder into his chest.

After explaining the extent of his injuries, when Gordon asked Vance during cross-examination if a doctor "recommended that [Vance] be transitioned or transferred to the University of Iowa for consultation with a neurosurgeon" Vance responded, "That is correct. But he was basing—seven years ago, April 18th, they told me I had four hours to live." Following Vance's comment, Gordon first objected to the comment as unresponsive. Then, Gordon moved for a mistrial. The State responded that it did not "believe that any of the doctor's statements had anything particularly germane to the issues in the case." The court responded, "Well, they didn't have any particularly germane to the question that was asked either but that didn't stop him from volunteering them." The court then denied the motion for mistrial.

When Gordon presented evidence in his case-in-chief, he testified that he saw Molly crying as she told him she was worried that Vance would call the police on her. He watched her waving her phone, throwing it on the floor, flopping down on the floor herself, and continuing to cry hysterically. He then walked down the street toward Vance and Vance "took, like, three big steps towards" him. Gordon added that Vance "starting yelling at [him] saying, how about a little—how about a little fucking respect" and waving a phone in his face. Gordon said that Vance then pushed him into the street with his shoulder. Gordon admitted that he pushed Vance and struck him "over top of his glasses." As he was leaving, Gordon looked back and did not see Vance on the ground or bleeding, but "he had a hand over on one side of his head." However, when asked if "when [he] struck . . . Vance, [he] intend[ed] any harm to him," Gordon said "No." Molly testified on rebuttal that none of Gordon's statements about her actions were accurate; instead, she

clarified that she was merely upset. Vance testified on rebuttal that he did not take three steps toward Gordon, wave his phone at him, or push him with his shoulder.

The jury found Gordon guilty as charged, and Gordon stipulated to being an habitual offender. Gordon appeals his conviction.

## II. Analysis.

Gordon makes two arguments on appeal: (1) the verdict is not supported by substantial evidence and (2) the court erred in overruling his motion for a mistrial based on Vance's violation of the ruling on the motion in limine.

### A. Sufficiency of the Evidence.

Gordon argues, first, that the State failed to prove he committed an assault and, second, that it failed to prove he was not justified in his actions. The State disagrees. We review the sufficiency of the evidence supporting convictions for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We affirm when the verdict is supported by substantial evidence, meaning "the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018) (citation omitted). In conducting our review, we consider "the evidence in the light most favorable to the [verdict], including all reasonable inferences that may be fairly drawn from the evidence." *Id.*

Because unchallenged jury instructions become the law of the case for purposes for our review of sufficiency of the evidence, *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020), to find Gordon guilty of assault causing serious injury, the jury had to conclude:

1. . . . [Gordon] did an [act] which was intended to cause pain or injury to . . . Vance.

2. [Gordon] had the apparent ability to do the act.

3. [Gordon's] act caused a bodily injury to . . . Vance . . . .

4. The bodily injury was a serious injury . . . .

5. [Gordon] acted without justification.

The instructions further defined bodily injury as "physical pain, illness, or any impairment of physical condition" and serious injury as "a bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ," including "skull fractures and rib fractures." In addition, the instructions explained that Gordon "was justified in using reasonable force if he reasonably believed that such force was necessary to defend himself or another from any actual or imminent use of unlawful force." Furthermore, "[r]easonable force is only the amount of force a reasonable person would find necessary under the circumstances to prevent injury" and Gordon "must have acted in an honest and sincere belief that the danger actually existed." Lastly, the instructions explained that Gordon's use of force was not justified if he "used unreasonable force under the circumstances."

At the onset, Gordon's multiple versions of the incident do not help his cause. The version he told Officer Themas contradicted his trial testimony. When interviewed by Officer Themas, Gordon denied any physical confrontation took place and, accordingly, never mentioned self-defense; he said they only had a verbal altercation. Contrast that description with the trial testimony, where Gordon admitted that he struck Vance over the top of his glasses but testified his action was done in his own defense. Thus, his sufficiency-of-the-evidence argument is

really a request by Gordon to believe one of the two versions he gave, claiming that the evidence to the contrary was insufficient to support the verdict reached. Second, he argues that, in the alternative, if he did hit Vance, such a use of force was justified because Vance struck him first by pushing him with his shoulder. Gordon's argument is essentially that the jury should have believed his version of events rather than Vance's and that we should now pick his version.

But it is not our role on appeal "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted); *accord State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (noting the jury is free to believe or disbelieve any evidence and to give weight to the evidence as it sees fit). This is so because "[i]nherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) (citation omitted); *accord State v. Shorter*, 945 N.W.2d 1, 10 (Iowa 2020) ("[T]he jury can believe some of a witness's story while rejecting other parts.").

Although Gordon testified to an alternative version of events, the jury "was free to discount that testimony based on its inconsistency with other evidence and [Gordon's] interest in the trial." *State v. Jenkins*, No. 21-1718, 2023 WL 4759448, at *6 (Iowa Ct. App. July 26, 2023). And, again, "we defer to the fact finder's determinations concerning witness credibility." *State v. Wells*, 629 N.W.2d 346, 356 (Iowa 2001). What's more, "a defendant's false story 'to explain or deny a material fact against him is by itself an indication of guilt and is relevant

to show that the defendant fabricated evidence to aid his defense.'" *State v. Bloom*, 983 N.W.2d 44, 50 (Iowa 2022) (cleaned up); *accord State v. Little*, No. 19-1062, 2021 WL 1400068, at *9 (Iowa Ct. App. Apr. 14, 2021) (noting a jury could properly infer guilt based upon actions such as making inconsistent statements to the police or using a fake name to disguise involvement).

Within the evidence that the jury did hear was substantial evidence to support the conviction, even given the dueling stories from Gordon and Vance. Gordon admitted at trial that he struck Vance on the head and saw that Vance was holding the area of his head near his left eye as Gordon walked away; but he had previously told Officer Themas a different version, claiming the altercation was only verbal. And uncontested evidence established that Vance suffered from pain in his head and back, had experienced headaches, limited range of motion in his neck, brain bleeding, and continuing vision issues in his left eye requiring consultation with a neurosurgeon. In contrast to Gordon's versions, Vance testified that Gordon approached him while he was talking on the phone and without provocation began hitting him. Vance denied that he took any steps toward Gordon or that he pushed Gordon with his shoulder first. Molly also testified that Gordon's version of the events involving her was incorrect. Despite Gordon's insistence that Vance threatened Molly and instigated the altercation, the jury was free to disregard that evidence, and even with Gordon's testimony, there was no evidence Gordon acted with justification. The jury also could have considered Gordon's false story as evidence of his guilt. Thus, we find that there was substantial evidence to support the conviction here.

### B. Motion for a Mistrial.

We review a district court's ruling on a motion for a mistrial for an abuse of discretion. *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). We will only reverse a denial of a motion for a mistrial based on a violation of a motion in limine if the party challenging the denial establishes prejudice. *State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). The burden is on Gordon, who "must show the violation of the limine order resulted in prejudice that deprived [him] of a fair trial." *Id.* at 80–81. The key question is "whether the trial court was clearly unreasonable in concluding an impartial verdict could be reached notwithstanding the witness's testimony." *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006).

Gordon argues

the jury was likely to give excessive weight to hearsay evidence from nontestifying medical professionals that Vance suffered extreme injuries as a result of the altercation, exacerbated by sympathy for his age and/or preexisting conditions. The inadmissible evidence appealed to the jury's instincts to sympathize with Vance and punish Gordon.

The State argues that the question preceding the hearsay statement asked about Vance's doctor's recommendation and Vance only gave an overanswer that explained the recommendation and so was not germane to any issues the jury had to decide. But, here, even if the answer contained hearsay, the evidence is mentioned only once in passing in the context of a long trial. *See State v. Huser*, 894 N.W.2d 472, 499 (Iowa 2017) (finding no abuse of the district court's discretion when it denied a motion for mistrial where "the three improper questions were a very small part of the fourteen-day trial with forty-five witnesses");

*Newell*, 710 N.W.2d at 32–33 (determining that the court did not abuse its discretion in denying a motion for a mistrial when "[t]he reference to drug charges occurred only once, and there were no questions that elaborated on this information"). In *State v. Barker*, even two violations of a limine ruling excluding testimony did not necessarily require the grant of a new trial, as the defendant did not establish prejudice. No. 18-1718, 2020 WL 110300, at *2–3 (Iowa Ct. App. Jan. 9, 2020) (citing *Kinseth v. Weil-McLane*, 913 N.W.2d 55, 73 (Iowa 2018) ("[O]ne or more violations of an in-limine order would not be per se grounds for a mistrial.")).

Here, we find that the court was not unreasonable in determining that the jury could reach an impartial verdict, having heard Vance's comment. The solitary statement about Vance's life expectancy in 2016, taken in the context of the entire, multi-day trial, does not rise to the level of prejudice requiring that the court order a mistrial. In fact, given that trial took place in 2023, more than seven years after the alleged prediction that Vance had no more than four hours to live, this comment is instead more accurately understood as unrelated to any issue at trial.

Directly related to whether the testimony prejudiced the jury to find against Gordon, we find there was substantial evidence supporting the assault without justification and serious injury elements such that a conviction would have followed in any event. The offending statement did not address whether Gordon assaulted Vance in 2021 and whether such an assault was without justification. It also was unrelated to Vance's current health condition following the alleged assault. And the photographic exhibits alone supported a serious injury finding. Finally, although Gordon faults the court for failing to strike the testimony before the jury

or to submit a curative instruction, drawing the jury's attention to the testimony would emphasize the information mentioned. And as to any curative instruction, Gordon failed to ask for one. *See Huser*, 894 N.W.2d at 899 (finding no prejudice warranting a mistrial when the parties could not agree to a curative instruction). As such, although hearsay, it is unclear that admission of the comment even violates the motion in limine ruling excluding testimony on Vance's "health progress since the alleged event" given that it predates the alleged event by five years and covered a different health condition. Therefore, because the evidence was strong against Gordon and he cannot show he was deprived of a fair trial because of the limited testimony offered, the court did not abuse its discretion in denying Gordon's motion for a mistrial.

**AFFIRMED.**